J. L. WARD AND WIFE v. THE ALBEMARLE & RALEIGH RAILROAD COMPANY.

*Practice—Issues—Request for Special Instructions to Jury— When Not in Apt Time.*

1. Where, in an action for damages caused by diversion of water from its regular channel, the plaintiffs expressly abandoned all claim for injury arising from the diversion and direction of surface-water upon their land, and where the response to issues already submitted would necessarily negative the idea of damage by "surface-water," it was not error for the Judge to refuse to submit an issue presenting the question whether the water diverted (if any) was rain or surface-water.

2. Requests for special instructions to the jury, as well as a request that the Judge shall put his charge in writing, should be made at or before the close of the testimony. This is the limit of "apt time," as settled by established practice, and any relaxation of the rule is in the discretion of the trial Judge.

3. A general exception to a charge as given by the Judge below cannot be considered in this Court.

4. Damages caused by diversion of water are not covered by the statute (section 1943 *et seq.* of *The Code*), providing for the acquirement of rights of way by railroad companies.

CIVIL ACTION, tried before *Bryan, J.*, and a jury, at March Term, 1892, of PITT Superior Court, for damages alleged to have been sustained by the diversion of water on plaintiffs' land by the negligent construction of defendant company's road-bed.

Plaintiff J. L. Ward testified as follows in reference to the water-courses on his land, and the ponding of the water thereon by the embankment constructed by defendant, and the damages resulting therefrom: "Live in Bethel, Pitt county, on north side of Albemarle & Raleigh Railroad Company; runs through my farm; it was completed in 1882. My drain-way was Sugg's branch. Before railroad built water went right away—no trouble. Head of it, 'Howell Thicks.' This is the source of the branch (objected to by defendant); it is several miles long; it is one and a half miles from my land. The branch empties into Grindall creek one and a half miles below my land. Sugg's branch average width over 200 yards; clear open run all the way. Before railroad the water run in branch half the year. Depth of water, average, one foot, two feet, or two and a half feet. Portion of branch canaled before war. Before railroad built, all canaled. Right at railroad eight feet wide; five feet above railroad. Through my land it was cut before railroad built, since then channelled out. Low grounds of Sugg's branch 200 yards wide. The land upon which I live extends above railroad along the branch half a mile; low grounds 200 yards wide; railroad embankment across low grounds about three feet high. Opening in embankment for water is nine feet. Before railroad built the land overflowed hardly ever, and then it would run right off; would run off in twenty-four hours. Character of land along canal good land; before railroad, has made eight to nine barrels to acre. Some cleared two years before, worth forty dollars per acre; since railroad, has been overflowed in ordi-

nary rains. The land is abandoned now. Thirty acres
finally ruined. Thirteen acres badly damaged. Before
railroad Sharper's branch emptied below railroad and
below my land into Sugg's branch; now empties above
embankment 400 yards, half between my house and rail-
road. The course of branch changed by railroad. The
waters of Sharper's branch, biggest part, right through my
field. Have known Sugg's branch forty years. Half as
much comes down railroad as comes down Sugg's branch.
Mighty nigh as much from Sharper's branch comes down
railroad as used to come down Sugg's; it overflows every-
thing. Three years prior to 1889 the water overflowed
embankment several times; one time washed. Water was
twenty-four inches higher above railroad than below in
1886 and 1887. The land has been overflowed sometimes
three times in one month. July and August the water is
held up four, five and six days. Have seen it several times
high enough for me to swim in and not touch bottom.
Have lived on it forty years. The forty-three acres, real
good land, average five barrels to acre above and below.
* * * The land has been damaged twenty or twenty-
five dollars per acre, now not worth over one dollar per
acre. In 1882 they closed the gaps in the embankment,
except the culvert. I complained to section master. He
said he would report and have it attended to. The water
ponded because culvert is not large enough. I know where
Sharper's branch is. The railroad runs across it, and some
places runs up to it. It is called Sharper's branch and
pocosin. It runs part of the time; no well-defined banks.
The water that runs in Sharper's branch is rain-water, it
springs up out of the earth. It has two prongs; prong on
south side don't reach railroad. Canal in Sugg's branch
was finished up a few years before railroad built. I have
seen canal overflow, but would run right off. I think the

culvert is the same size as canal. The culvert is but nine feet. I had no trouble from Sharper's branch before railroad was built. They cut a ditch and throwed the water right down on my field from Sharper's branch. I don't know that railroad cut any ditch or hauled any dirt outside of their right of way. They cut into my ditch. They cut nothing outside of one hundred feet from center of road-bed. Railroad runs through my land about 500 yards."

The defendant introduced no testimony. The evidence in the case was closed about 5 o'clock Thursday afternoon, March 31, the counsel for the defendant asking the Court to take a recess until morning, April 1, so that they might prepare for the argument. Court then adjourned until 9:30 o'clock Friday morning, April 1. Sometime during the day, Thursday, the Judge asked the attorneys on both sides to hand him their prayers for special instructions, if they intended to ask any, during the evening.

The defendant on Friday morning, just before the argument commenced, made a request of the Court to put the charge in writing, and after one of the counsel for the defendant had spoken and one of the counsel for the plaintiffs had been speaking some time, handed up a request for twenty-five special instructions. The Judge remarked that the request was not in apt time. The instructions were refused.

After the jury was empaneled and before the testimony began, upon motion of defendant to dismiss the second and third causes of action, stated in amended complaint for non-compliance with "Rule 24" of the Supreme Court, in regard to the alleging of two or more causes of action, the plaintiffs were allowed to reform their complaint by writing out their allegations referred to in said causes of action by sections. After the testimony was closed the

plaintiffs took a nonsuit as to third cause of action stated in the complaint, and asked the Court to withdraw the sixth issue, as originally proposed, from the jury, which was done. Exception by defendant.

The issues which were tendered by the plaintiffs and submitted to the jury by the Court, with the exception of the sixth, which was withdrawn under exception by the defendant, were as follows:

1. Are the plaintiffs the owners of the land described in the complaint?

2. Is Sugg branch a natural course?

3. Is Sugg branch an artificial drainway for the plaintiffs' land?

4. Did the defendant company negligently construct its road across Sugg branch so as to cause the waters thereof to pond back upon the lands of the plaintiffs?

5. Did the defendant company negligently divert watercourses and turn the same upon the plaintiffs' land?

6. Did the defendant company negligently divert surface-water and turn the same upon plaintiffs' land?

7. Were the embankments and drains, as constructed by defendant, necessary and proper for the safe transportation of passengers and freight?

8. Were the plaintiffs guilty of contributory negligence?

9. What damage, if any, have the plaintiffs sustained?

The defendant tendered the following issue: Was the water diverted by the defendant, if any, rain or surface-water? which issue the Court declined to submit.

The defendant excepted to the issues as submitted, and to the refusal of his Honor to submit the issues tendered by the defendant.

The Judge charged the jury as follows, in writing, he having been requested by defendant to put his charge in writing:

"If you believe the evidence, you will answer the first issue, Yes.

"A water-course is a stream of water, including banks, bed and water. It is not necessary to prove that water flows continuously. It may be dry at certain seasons of the year, but at some period of the year must be a stream flowing in a well-defined channel. If the jury believe from the evidence that Sugg's branch, at some season of the year, had a well-defined existence as a stream by nature, and not by artificial means, and there was water to run in it, although it might be dry in a dry time, it would be a natural water-course, and you should answer the second issue, Yes; otherwise, No.

"Occasionally, sudden and temporary outbursts of water in time of heavy showers and freshets, filling up low places and overflowing adjoining lands, would not be a water-course, unless such water flows off through a well-defined channel which it has worn for itself.

"If the jury believe from the evidence that a canal or ditch has been dug so as to collect the waters of Sugg's branch and carry them off of the plaintiffs' land, thereby draining the same, you will answer this issue, Yes; but if this water is not carried off by means of some ditch, canal, or drain constructed by man, then it is not an artificial drain-way, and you will answer the third issue, No.

"As to the fourth issue, and the main one in the case, it is admitted that the road embankment was there and that a culvert was constructed; defendant says it was sufficient and that it did all the law requires.

"Now what is the truth of the matter? The Court instructs you that it was the duty of the defendant to have constructed its culvert so that it would carry off the water under all ordinary circumstances and the usual course of nature, even to the extent of such heavy rains as are ordi-

narily expected. If the defendant so constructed its culvert that it was not sufficient to carry off the waters having a natural outlet there, and such as was brought down by defendant's ditches under ordinary circumstances, that is, the usual rain-fall, even such rains as are occasional, and if by reason of the insufficient culvert the plaintiffs' land was overflowed, or the water ponded back on it, you should answer this issue, Yes.

"If the jury believe from the evidence that the culvert is sufficient to carry off all of the water having a natural outlet there, and such as was brought down there by the defendant's ditches, except in cases of extraordinary and unusual rain-fall, then the defendant was not negligent, and if the overflow was the result of extraordinary rain-fall, you should answer this issue, No. How this may be is a question for you.

"We now come to the fifth issue. If the jury believe from the evidence that the defendant diverted water-courses (the legal definition has been given you), that is, turned them from their natural course without providing sufficient canals or ditches to take the water off, and the same was thrown upon the land of the plaintiff, you will answer the issue, Yes.

"But if defendant did divert water-courses and at the same time provided sufficient canals or ditches upon its right of way, or elsewhere, to take all the water from such water-courses except that from an extraordinary and unusual rain-fall, then you must answer this issue, No.

"As to the damages of the ninth issue: The party suing for an injury received can only recover such damages as naturally flow from and are the immediate result of the act complained of. The jury should be governed by the evidence before them, and they have no right to indulge in conjectures or speculations not supported by the evidence—

as to the damages the jury may themselves make such esti-
mate from the facts and circumstances in proof, and, by
considering them in connection with their own knowledge,
observation and experience in the business affairs of life,
say what the damage is to the land.

"Damage to the land may be estimated by comparing
the productiveness when flooded with its productiveness
when not flooded, the loss of the crop may be considered,
etc.   *   *   *

"The burden of the seventh and eighth issues is upon
the defendant, and the Court instructs you that there is
no evidence to sustain them.

"The sixth issue having been withdrawn, all the evidence
bearing upon it you will disregard."

To which charge the defendant excepted.

The jury returned a verdict finding the first, second,
third, fourth and fifth issues in the affirmative, and the
seventh and eighth in the negative, and assessed the plain-
tiffs' damage at $860, for which amount, together with
costs, the Court gave judgment.   From this judgment the
defendant appealed.

*Mr. Don Gilliam,* for plaintiffs.

*Messrs. John L. Bridgers* and *James E. Moore,* for defend-
ant (appellant).

MACRAE, J.: "The defendant excepts to the issues as
submitted and to the refusal of his Honor to submit the
issue tendered by the defendant."   The only issue tendered
by the defendant which appears in the case is, "Was the
water diverted by the defendant, if any, rain or surface-
water?"   The sixth issue, which was withdrawn when the
plaintiff took a nonsuit upon his third cause of action, was,
"Did the defendant company negligently divert surface-

water and turn the same upon plaintiffs' land?" The plaintiffs had abandoned all claim for damages by reason of the 'diversion and direction of surface-water upon their land.

His Honor, in his charge upon the second and fifth issues, carefully defined "a water-course" and directed the attention of the jury to the difference between it and mere surface-water; he repeatedly used the word "water-course" and excluded all idea of surface drainage or extraordinary rain-fall. It would not have simplified the matter for the jury if he had presented the question in the alternative by submitting another issue, when the response to those already submitted necessarily negatived the idea of damage by surface-water.

The second prayer of defendant was given in substance and nearly in words, and expressly excluded surface drainage, and the fifth prayer, which was given likewise, excluded drainage caused by excessive rain-fall. His Honor might have confined the issues to the fourth, fifth, eighth and ninth, as they comprehended all the others. We have examined them all under the defendant's exception. They presented every phase of the mutual altercation between the parties with great particularity, and, with the instructions upon them, an ordinary juror could not fail to understand the matters in dispute.

The testimony was concluded on Thursday evening, and on Friday morning just before the argument began the defendant's counsel requested his Honor to put his charge in writing. By a reasonable construction of section 414 of *The Code* the Judge was entitled to have this request made at the close of the testimony on the preceding evening, and if it had then been made he would have had the opportunity to prepare his charge during the recess of the previous night. By the statute this request should be made at

or before the close of the evidence. In order to comply with the request, as he did, it must have been necessary for the Judge to write out his charge, in which every word must have been carefully weighed, during the progress of the argument, at which time he ought to have been free to listen to the counsel in order that he might, upon the better reason, have been able to make such change as he deemed proper in the prepared instructions, before delivery. But after one counsel for defendant had spoken, and while counsel for plaintiffs was in the midst of his remarks, the counsel for defendant handed up a request in writing for twenty-five special instructions, some of them long and most of them requiring careful consideration. It will be remembered that sometime during Thursday the Judge asked the attorneys on both sides to hand him their prayers for special instructions, if they intended to ask any, during the evening, not confining them to the strict rule, to prevent them from doing so at or before the close of the evidence. Let us consider, and we trust that it will .be accepted by the profession as final, whether these prayers were presented in apt time.

The statute (*The Code*, §415) is silent as to the time when they should be presented. "Counsel praying of the Judge instructions to the jury shall put their requests in writing, entitled of the cause, and sign them." Early after the adoption of the Code of Civil Procedure it became necessary to consider this section with relation to the time at which prayers for special instructions should be presented, and in *Powell* v. *Railroad*, 68 N. C., 395, it was intimated that at the close of the evidence was the proper time, in order that the Judge might consider them while arranging or preparing his charge; and at the same time it was said that this Court did not mean to be understood that counsel should be prohibited, even after the Judge had finished his

instructions, from calling his attention to any point which he had inadvertently omitted, or his instructions as to which were not well understood. These suggestions have been generally followed in their spirit, though not in the strict letter thereof, until they have become a recognized rule of practice in our Courts. "It was evidently intended that the Judge should have time to consider and prepare his instructions, and it is unjust and unfair to him to present a prayer for special instructions at so late a period in the trial as to leave him insufficient time to consider them." *State* v. *Rowe*, 98 N. C., 629.

In *State* v. *Barbee*, 92 N. C., 820, specially relied upon by defendant's counsel, where the counsel presented a written prayer after the case had been given to the jury, with the request to the Judge that if the jury should return and ask for further instructions he would give this as prayed, it was said: "In the order of procedure in the trial, the defendant had the right and the reasonable opportunity to ask the Court to give such instructions before the issue was given to the jury; after that, the Court might in its discretion give or decline to give them. * * * The defendant must ask for special instructions, as of right, in apt time in the progress of the trial, else the Court may decline to give them."

The reason for the adoption of this time—the close of the evidence—as the limit of apt time is so clearly stated by Mr. Justice CLARK, in *Posey* v. *Patton*, 109 N. C., 455, and in *Merrill* v. *Whitmire*, 110 N. C., 367, where all the cases bearing upon it are cited, that we might well have contented ourselves with a simple reference to the last named cases. But in deference to the earnest argument of the learned counsel we have deemed it proper to say this much. It should now be considered that in justice to the trial Judge the practice in this respect is settled, and left in his hands.

Administered as our Superior Courts are, there is no danger of too strict an adherence to the rule; the inclination is in a liberal spirit to give to counsel every opportunity consistent with the business principles upon which our system of procedure is based, but there must of necessity be some recognized general rule of practice as to apt time by which the profession may understand their rights and duties in the premises.

It has also been repeatedly declared by this Court that a general exception to the charge as given cannot be considered. *McKinnon* v. *Morrison*, 104 N. C., 354; *Hopkins* v. *Bowers*, 111 N. C., 175, and the numerous cases there cited. There was no exception to the charge of his Honor upon the first issue—"Are the plaintiffs the owners?" etc.— and there was no exception to the evidence offered upon this issue. We think his Honor was warranted in giving the instruction.

We did not understand the question of jurisdiction to have been seriously pressed by the learned counsel for defendant in his argument. We are of the opinion that the damages here claimed are not covered by the statute providing for the acquirement of rights of way by railroad companies (section 1943 *et seq.* of *The Code*). There is no error, and the judgment is                    Affirmed.