IN THE MATTER OF THE WILL OF W. J. CASSADA, DECEASED.

(Filed 3 March, 1948.)

**1. Wills § 17—**

While in a strict sense there are no parties to an issue of *devisavit vel non,* the proceeding being *in rem,* propounders and caveators may be put in the category of parties for the purpose of ruling upon the admissibility in evidence of their admissions and declarations.

**2. Wills § 23b: Evidence § 42c—**

The extra-judicial admissions of one of several caveators, made without authority of the others, is not competent on behalf of propounders to contradict caveators' assertion of testamentary incapacity, since even though it be a declaration against interest and would be competent against the caveator making the admissions if he were the sole caveator, yet such caveator is not in privity with the others and has no joint interest with them in the matter in suit, and therefore the admissions are incompetent as against the other caveators.

**3. Wills § 18c—**

> Caveators have a community of interest in the successful prosecution of the caveat, but they are not in privity and do not have a joint interest in the matter in suit in a legal sense, but, if successful, will hold their respective shares in the realty as tenants in common and their respective shares in the personalty in severalty.

APPEAL by caveators from *Nettles, J.,* and a jury, at the October Term, 1947, of BUNCOMBE.

This is a caveat to the script propounded for probate as the will of W. J. Cassada, deceased, who was twice married. His first wife, Violet Cassada, died intestate 24 June, 1901, leaving the following six minor children born of her union with the decedent: Jeter Cassada, Dewey Cassada, George Cassada, Melissa Cassada, Eula Cassada, and Iva Cassada. Melissa Cassada, Eula Cassada and Iva Cassada were subsequently married respectively to men bearing the surnames of Plemmons, Bailey, and Tillery. Iva Cassada Tillery died intestate, survived by an only daughter, Mrs. R. D. Gunter. After the death of his first wife, W. J. Cassada contracted a second marriage with Lucinda Cassada, and had the following nine children by her: Winston Cassada, Vista Cassada, Luther Cassada, May Cassada, Norma Cassada, Kate Cassada, Willard Cassada, Cecil Cassada, and Lyle Cassada.

On 5 March, 1903, W. J. Cassada bought 182 acres of land known as the Jud Wells farm on Turkey Creek in Buncombe County from J. E. Hampton for a recited consideration of two thousand dollars. Here he made his home until his death on 25 December, 1945. This farm constitutes practically the entire estate of the decedent. According to testimony adduced by the caveators on the trial, the Jud Wells place had a market value of about twenty-five thousand dollars on 29 December, 1936, when W. J. Cassada executed the script now offered for probate as his will.

By this paper writing, the deceased willed all of his property, including the Jud Wells farm, to Lucinda Cassada, his second wife, and to Willard Cassada, Cecil Cassada, and Lyle Cassada, his three youngest sons by his second marriage, subject only to the payment of fifty dollars in cash to each of his other twelve children. The propounders, Lucinda Cassada, Willard Cassada, Cecil Cassada, and Lyle Cassada, caused this paper writing to be admitted to probate in common form before the Superior Court of Buncombe County, and thereupon Jeter Cassada filed a caveat contesting the validity of the script as the will of W. J. Cassada upon the allegations that W. J. Cassada lacked testamentary capacity at the time of its execution and that its execution was procured through undue influence exerted upon W. J. Cassada by the propounders, Lucinda Cassada and Willard Cassada. It is asserted in the brief of the pro-

pounders that Dewey Cassada, George Cassada, Melissa Cassada Plemmons, and Mrs. R. D. Gunter, joined Jeter ·Cassada in the prosecution of the caveat. This Court assumes this assertion to be true for the purpose of this decision, despite the fact that there is nothing in the record sustaining it except a mere recitation in the judgment. The trial court properly ruled that the evidence adduced on the hearing was insufficient to justify the submission of an issue as to undue influence.

There was sharp conflict in the testimony on the trial relating to the mental state of W. J. Cassada. In support of their claim that their virtual disinheritance was an unnatural act on the part of the decedent, the caveators offered evidence indicating that while such children were small infants and while he was serving as their guardian, W. J. Cassada wrongfully invested in the purchase of the Jud Wells place about six hundred dollars accruing to the six children of his first marriage from the estate of their deceased mother, Violet Cassada, and that he never repaid such moneys so used by him to such children. To repel any inference that there was anything unnatural in the act of W. J. Cassada in willing practically all of his property to them, the propounders undertook to prove that the propounders were the only members of the family residing with and dependent upon the decedent at the time of the execution of the alleged will, and that the decedent had paid over to his children by his first marriage all moneys accruing to them from the estate of their deceased mother. In this connection, the propounders were permitted to introduce in evidence over the exception of the caveators a declaration made by Dewey Cassada, one of the caveators, after the filing of the caveat, to the effect that he had received from his father and guardian, W. J. Cassada, his full share in the estate of his deceased mother, Violet Cassada, and that he disclaimed any interest in the Jud Wells farm or in any other part of the estate of W. J. Cassada. Dewey Cassada did not appear on the trial as a witness, and his declaration was not authorized in any way by any of the other caveators.

Upon issues submitted, the jury found that the paper writing offered for probate had been executed by W. J. Cassada in due form of law, and that W. J. Cassada possessed testamentary capacity at the time he signed the same. The trial court entered judgment on the verdict establishing the script in question as the will of the decedent, and the caveators appealed to this Court upon exceptions duly preserved.

*Guy Weaver and James E. Rector for propounders, appellees.*
*George M. Pritchard for caveators, appellants.*

ERVIN, J. The probate of a will is a proceeding *in rem,* and there are in a strict sense no parties to an issue of *devisavit vel non. In re*

*Lomax,* 226 N. C., 498, 39 S. E. (2d), 388. But the courts put propounders and caveators in the category of parties for the purpose of ruling upon the admissibility of their admissions and declarations in will contests. See Page on Wills (Lifetime Ed.), Vol. 2, sections 801, 802, 803.

The exception of the caveators to the introduction of the declaration of Dewey Cassada presents this question for determination: Where several heirs at law and next of kin caveat an alleged will of a decedent on the ground of testamentary incapacity, are extra-judicial admissions of one of the caveators made without the authority of the others competent as substantive evidence in behalf of the propounders to contradict the assertion of testamentary incapacity made by the caveators or to establish the claim of testamentary capacity advanced by the propounders? This question must be answered in the negative.

The propounders insist, however, that this answer is incorrect, because of the familiar rule of evidence that a declaration against interest constitutes legal testimony against the declarant. *McCraine v. Clarke,* 6 N. C., 317; *Enloe v. Sherrill,* 28 N. C., 212. As the statement of Dewey Cassada received in evidence on the trial has a tendency to refute the claim of the caveators that their virtual disinheritance by the decedent was unnatural, it is undoubtedly a declaration against the interest of the declarant, Dewey Cassada, and would clearly be admissible against him as such under the authorities if he were the sole heir at law and next of kin of the decedent. 167 A. L. R., Annotation, 12-109; 28 R. C. L., Wills, section 412; *Pollock v. Pollock,* 328 Ill., 179, 159 N. E., 305; *McMann v. Murphy,* 259 Mass., 397, 156 N. E., 680. See, also, in this connection, the authorities quoted in these North Carolina cases: *In re Fowler,* 156 N. C., 340, 72 S. E., 357; Ann. Cas. 1913A, 85, 38 L. R. A. (N. S.), 745; *Linebarger v. Linebarger,* 143 N. C., 229, 55 S. E., 709, 10 Ann. Cas., 596. This would be true in such case, because the admissions as to the mental capacity of the alleged testator would affect the interest of the declarant only. *Ramseyer v. Dennis,* 187 Ind., 420, 119 N. E., 716.

But Dewey Cassada is not the sole heir at law and next of kin of W. J. Cassada. Five other heirs at law and next of kin of the decedent have joined in the caveat and are here resisting the probate of the script in controversy. The admission of Dewey Cassada received in evidence on the trial was not authorized in any way by any of the other caveators. These facts call for the application of the well settled and just principle that no one should be concluded by the unauthorized statements of another where there is no privity between them and they have no joint interest in the matter in suit. *Linebarger v. Linebarger, supra;* 31 C. J. S., Evidence, section 318. No privity exists between Dewey Cassada and

the other caveators. Each of the caveators claims independently of the others through W. J. Cassada alone under the statutes of descent and distribution. The caveators have a community of interest in the successful prosecution of the caveat, but they do not have a joint interest in the matter in suit in a legal sense. On the contrary, their interests are several. If they meet with success in their effort to defeat probate of the alleged will, they will not be joint owners of either the real or the personal property of the decedent. In such event, they will hold their respective shares in the land in question as tenants in common and their respective shares in the personal estate under consideration in severalty.

This is not a case where a declaration against interest can be admitted as against the party who made it and excluded as against his coparties. This is true, because the paper writing in controversy cannot be admitted to probate as against Dewey Cassada and rejected for probate as against the other caveators. The issue relating to the testamentary capacity of the deceased involves the validity of the alleged will as a whole, and the court is limited in power to the rendition of a judgment either probating the alleged will in its entirety or rejecting it as a whole. The admission of Dewey Cassada should not, therefore, be received in evidence, because it could not possibly have any effect as to himself without affecting the other caveators. Hence, reason demands that the declaration be excluded, and that the propounders be required to maintain their position upon the issue concerning the testamentary capacity of the decedent by testimony competent against all of the caveators.

This conclusion finds full support in well considered decisions of this Court and of appellate courts in other jurisdictions. *McDonald v. McLendon,* 173 N. C., 172, 91 S. E., 1017, Ann. Cas., 1918A, 1063; *In re Fowler, supra; Linebarger v. Linebarger, supra; Estate of Dolbeer,* 153 Cal., 652, 96 P., 266, 15 Ann. Cas., 207; *Roller v. Kling,* 150 Ind., 159, 49 N. E., 948; *Powell v. Bechtel,* 340 Ill., 330, 172 N. E., 765; *James v. Fairall,* 154 Iowa, 253, 134 N. W., 608, 38 L. R. A. (N. S.), 731; *Matter of Myer,* 184 N. Y., 54, 76 N. E., 920, 6 Ann. Cas., 26. A case very much in point is *Matter of Kennedy,* 167 N. Y., 163, 60 N. E., 442. See, also, 31 C. J. S., Evidence, sec. 318; 28 R. C. L., Wills, Sec. 412.

The error committed in receiving the declaration in question in evidence is of sufficient moment to entitle the caveators to a new trial. It is so ordered.

New trial.