DORA ALEXANDER HANKS, ADMX., v. NORFOLK & WESTERN R. R.

(Filed 30 March, 1949.)

**1. Railroads § 4—**

Evidence in this action for wrongful death resulting from a collision at a railroad grade crossing *is held* sufficient to be submitted to the jury and overrule the railroad company's motion to nonsuit.

**2. Death § 8—**

The measure of damages in an action for wrongful death is the present worth of the pecuniary loss suffered by those entitled to the distribution of the recovery, which is to be measured by the probable gross income of the deceased during his life expectancy less the probable cost of his own living and usual or ordinary expenses.

**3. Same—**

In an action for wrongful death, evidence relating to the age, health and life expectancy of deceased, his earning capacity, his habits, his ability and skill, the business in which he was employed and the means he had of earning money is competent.

**4. Same—**

In an action for wrongful death, authenticated copies of court records showing that the deceased had pleaded guilty and was sentenced for non-support of his minor children, with sentence suspended on condition that he pay into the clerk's office a stipulated sum weekly for their support, *is held* competent on the issue of damages, since it imports more than a single act of dereliction and reveals a serious defect of character.

**5. Same—**

In an action for wrongful death, complaint and order for temporary alimony in an action for reasonable sustenance theretofore brought by the deceased's wife against him, which had not been served on deceased because of his death, are properly excluded.

**6. Same—**

In an action for wrongful death, verified complaint in an action theretofore instituted by deceased against his wife for absolute divorce, alleging that he and his wife had entered into an agreement respecting custody and support of the minor children of the marriage, and setting forth the agree-

ment, is competent upon the issue of damages to show the attitude of the deceased toward his family.

**7. Same—**

    In an action for wrongful death, the inventory of the estate of the deceased showing salary due decedent at the time of death and the present action for wrongful death as the total assets of the estate, is competent as an aid to the jury in arriving at a proper estimate of the pecuniary worth of the decedent to those entitled to the distribution of the recovery.

ERVIN, J., dissenting.

DEVIN and SEAWELL, JJ., concur in dissent.

APPEAL by defendant from *Gwyn, J.,* September Term, 1948, of FORSYTH.

Civil action to recover damages for death of plaintiff's intestate alleged to have been caused by the wrongful act, neglect or default of the defendant.

The record discloses that plaintiff, administratrix, is the widow of James Garfield Hanks, who was killed on the morning of 12 January, 1947, about 8:35 a.m., when a delivery truck of Southern Dairies, Inc., which he was driving, collided with the engine of defendant's passenger Train No. 34 at a grade crossing near Oak Grove Church in Forsyth County.

It is in evidence that the train approached the single-track crossing, with headlight burning, coasting down grade at a speed of 40 or 45 miles per hour. The morning was cold and foggy; the atmosphere hazy.

The deceased was delivering milk, and Lawrence Tuttle, a boy of fifteen years of age, was with him on the "step-in-drive" truck—a retail delivery truck in which the driver stands up to drive—and as they came to the crossing, with which they were familiar, the deceased brought the truck to a stop. Both looked and listened, but neither saw nor heard the approaching train, and the deceased then drove onto the crossing.

The engineer testified that he sounded the regular crossing whistle, two long and two short blasts, for the crossing in question, "and I was blowing the last short when I hit the milk truck. . . . I didn't see that truck."

As bearing upon the measure of damages the plaintiff was allowed to show the gross earnings of the deceased for the past several years and that he was being paid an average weekly wage of $74.40 per week as a swing man or substitute truck driver at the time of his death.

In reply or rebuttal the defendant sought to show what manner of man the deceased was by offering the following:

1. Judgment of Winston-Salem Municipal Court showing that on 7 October, 1943, Garfield Hanks "entered a plea of guilty" and was

adjudged guilty of nonsupport of his two minor children and sentenced to the roads for six months, execution against the person suspended for fifteen years on condition the defendant pay into the Clerk's office $10 per week for the support of his children.

As this judgment was a bar to Hanks' entrance into the Army, it was suspended on 24 February, 1944, "during the period the said defendant is in the Military Service of the United States," the original judgment to be in full force and effect upon the termination of such service.

2. Complaint and order for alimony *pendente lite* in action filed by Dora A. Hanks *v.* Garfield Hanks for maintenance and support, said complaint having been filed in the Superior Court of Forsyth County 29 January, 1944, and order signed 9 February, 1944.

3. Summons and verified complaint filed in the Superior Court of Forsyth County 11 January, 1947, in the case of Garfield Hanks *v.* Dora Alexander Hanks for absolute divorce on ground of two years' separation, it being alleged in the complaint that the plaintiff and defendant therein had entered into an agreement respecting the custody and support of their three minor children. The children were to remain in the custody of the mother, and the plaintiff agreed to pay, through the Clerk's office of the Municipal Court, for their maintenance, support and education, $25 per week until the oldest two, twin girls, reached the age of eighteen years, and thereafter to pay in the same manner and for like purpose $12.50 per week until the youngest child attained the age of eighteen years.

This complaint was filed on the day prior to the death of plaintiff's intestate. The summons was returned unserved due to "plaintiff's death."

4. The defendant offered the original inventory of the estate of Garfield Hanks, filed 25 July, 1947, showing "salary due decedent at date of death, $110.33," the instant action for wrongful death, and nothing more.

All the foregoing evidence offered by the defendant was excluded. Objection and exception in each instance.

The usual issue of negligence, contributory negligence and damages were submitted to the jury and answered in favor of the plaintiff, the jury assessing the damages at $27,500.00.

From judgment on the verdict, the defendant appeals, assigning errors.

*Higgins & McMichael for plaintiff, appellee.*
*W. W. Coxe and Craige & Craige for defendant, appellant.*

STACY, C. J. The appeal presents for review the rulings on the motions for nonsuit and the exception to exclusion of defendant's evidence offered to show the character of the deceased and his disinclination to provide for dependent members of his family.

The defendant stressfully contends that its motion for judgment of nonsuit should have been allowed, if not at the close of plaintiff's evidence, then certainly at the close of all the evidence. Authorities may be found which lend support to the rulings below, and others which seem to point in the opposite direction. It is clearly a border-line case. *Quinn v. R. R.,* 213 N.C. 48, 195 S.E. 85. Upon full consideration and careful perusal of the record, we are inclined to the view that plaintiff's evidence survives the demurrers and suffices to make it a matter for the jury. Anno. 162 A.L.R. 96. The rulings on the motions for judgment as in case of nonsuit will be upheld. *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Meacham. v. R. R.,* 213 N.C. 609, 197 S.E. 189.

We are yet to consider, however, the exclusion of defendant's evidence offered to show the character and fiber of the deceased in dealing with dependent members of his family. Was any of this proffered evidence admissible or was its total exclusion correct? The answer lies in the type of questions to be decided and the pertinency of the evidence as a means to such decision.

It is provided by G.S. 28-174 that in an action for wrongful death the plaintiff may recover such damages "as are a fair and just compensation for the pecuniary injury resulting from such death." It is further provided in G.S. 28-173 that the amount recovered in such action is not liable to be applied as assets of the estate of the deceased, except as to burial expenses, "but shall be disposed of" according to the statute of distributions of personal property in case of intestacy.

The method established by the decisions for measuring the pecuniary loss resulting from the death of the deceased is to deduct the probable cost of his own living and usual or ordinary expenses from his probable gross income which might be expected to be derived from his own exertions during his life expectancy. *Carpenter v. Power Co.,* 191 N.C. 130, 131 S.E. 400. In arriving at this assessment (the present worth of which alone may be awarded the plaintiff), the jury is at liberty to take into consideration the age, health and expectancy of life of the deceased, his earning capacity, his habits, his ability and skill, the business in which he was employed and the means he had for earning money; the end of it all being, as expressed in *Kesler v. Smith,* 66 N.C. 154, to enable the jury fairly to fix upon the net income which the deceased might reasonably be expected to earn from his own exertions, had his death not ensued, and thus get at the pecuniary worth of the deceased to his family. *Burns v. R. R.,* 125 N.C. 304, 34 S.E. 495. It follows, therefore, that evidence to all these points was properly admissible on the hearing. *Burton v. R. R.,* 82 N.C. 505.

Was any of the excluded evidence conducive to one or more of these ends? We think so, especially as it was offered in reply to the evidence

of the plaintiff tending to show the gross earnings of the deceased over a period of time immediately preceding his death.

1. The defendant sought to show that the deceased entered a plea of guilty of nonsupport of his two minor children in the Winston-Salem Municipal Court on 7 October, 1943, and was sentenced to the roads, with execution against the person suspended on condition that he pay into the Clerk's office $10 a week for the support of his children, and that on 24 February, 1944, this judgment was ordered in abeyance during the period the deceased was in military service.

This was evidence of more than a single act of dereliction on the part of the deceased. It showed the neglect and disregard of a parent for his children which had necessarily continued for some time before he was hailed into court. Moreover, it revealed a serious defect of character—the will to "provide not for his own, and especially for those of his own house" (I Tim. 5:8)—and it was competent to be shown in evidence under authority of what was said in *Kesler v. Smith,* 66 N.C. 154. Dean Wigmore. remarks in his valuable work on Evidence, Vol. I, Sec. 210a, 3rd Ed., ". . . it would seem that the particular bad acts of a deceased person would be receivable to evidence his moral character, as far as that character might be material in estimating the damages payable to next of kin in an action for loss of support due to death by wrongful act."

The evidence was admissible as bearing upon the moral fiber of the deceased and as tending to show what manner of man he was, especially in providing for those of his own household who were dependent upon him. *Hicks v. Love,* 201 N.C. 773, 161 S.E. 394; *Hill v. Erie R. Co.,* 232 N. Y. Sup. 66.

2. The defendant offered the complaint and order for temporary alimony in the wife's action against the deceased for reasonable subsistence and counsel fees, filed in the Superior Court of Forsyth County, 29 January, 1944, which on objection were excluded.

As the record fails to show any service of process on the deceased or that he ever had any notice of the pendency of the action or participated in any hearing therein, the ruling of the court below will not be disturbed. In this connection, however, reference is made to the cases of *Peterson v. Pete-Erickson Co.,* 186 Minn. 583, 244 N.W. 68; *Piland v. Yakima Motor Coach Co.,* 162 Wash. 456, 298 Pa. 419, and *Austin Gaslight Co. v. Anderson* (Texas, 1924), 262 S.W. 136, as bearing obliquely on the subject, if not directly in point. Anno. 90 A.L.R. 922.

3. The defendant sought to show that on the day before his death, the deceased filed suit against his wife in the Superior Court of Forsyth County for absolute divorce on the ground of two years' separation, alleging in his verified complaint that he and the defendant therein had entered into an agreement respecting the custody and support of their

three minor children and setting out the terms of the agreement. This was excluded presumably on the ground that the summons and complaint were returned unserved due to the death of the plaintiff therein.

It appears, however, that the deceased invoked the jurisdiction of the court and filed his verified complaint in the action, alleging matters which made manifest his attitude towards the support of his family. Indeed, the complaint spells out his attitude precisely. This was competent to be shown on the issue of damages. *Hicks v. Love, supra.*

In the case last cited, it was held competent for the administrator to show "that the deceased provided for his family, that he had a comfortable home, a 200-acre farm, and a plenty for his family to eat and wear." Clearly, then, if the plaintiff in an action for wrongful death is permitted to reveal the provident attitude of the deceased towards his family, the defendant cannot be denied the right to offer evidence tending to disclose a contrary attitude on the part of the deceased towards the same obligation. *S. v. Creech,* 229 N.C. 662, 51 S.E. 2d 348.

4. The defendant offered the original inventory of the estate of the deceased, filed 25 July, 1947, showing "salary due decedent at date of death, $110.33," the present action for wrongful death, and nothing more.

We have two cases bearing upon the question, the one upholding the exclusion of such evidence, *Cooper v. R. R.,* 140 N.C. 209, 52 S.E. 932, the other favoring its admission, *Witte v. R. R.,* 171 N.C. 309, 88 S.E. 435.

In the *Cooper case,* the evidence was first admitted and then withdrawn on the plaintiff's rebuttal showing that the "deceased had been taking care of five orphans, children of his deceased sister and her deceased husband; that he was taking care of his aged father over 80 years of age, and was taking care of an elder sister in addition to his own wife and child," as appears from the original transcript.

Here, no such complication is presented, at least not up to the present time. Such evidence has been admitted more often than excluded when it gave indication of accumulation by personal effort. *McClamrock v. Colonial Ice Co.,* 217 N.C. 106, 6 S.E. 2d 850. Where the jury is to determine "the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased," we think it should have the benefit of all available light on the subject. *Carter v. R. R.,* 139 N.C. 499, 52 S.E. 642. And in the absence of matters to complicate the question, it would seem that what the deceased left at death as a result of his own exertions ought to be of some help to the jury in arriving at a proper estimate of his pecuniary worth to the recipients or disposees of the recovery who take after the manner of distributees of deceased's personal estate. *Witte v. R. R., supra.*

It results, therefore, from what is said above that the defendant is entitled to another hearing.  It is so ordered.

New trial.

ERVIN, J., dissenting:  The defendant reserved exceptions to the exclusion of its Exhibits A, B, C, D, E, F, and G, and is now awarded a new trial by the majority of this Court on the specific basis that the rejection of Exhibits A, D, E, F, and G constituted error.  I cannot agree with this decision.

It is a fundamental rule of appellate practice that a judgment will be upheld on appeal unless the appellant shows affirmatively by the record that some reversible, material, substantial, or prejudicial error was committed by the lower court.  *S. v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520; *Roberts v. Bus Co.,* 198 N.C. 779, 153 S.E. 398; *Hare v. Grantham,* 158 N.C. 598, 74 S.E. 102; *Biggs v. Waters,* 112 N.C. 836, 16 S.E. 921.  Consequently, the burden devolves on defendant to establish by the record that the trial court erred in excluding the exhibits which it presented.

To be admissible, evidence must satisfy these two requirements: (1) It must be relevant to the issue; and (2) its reception must not be forbidden by some specific rule of law.  Wigmore on Evidence (3d Ed.), Sections 9-10; *Peebles v. Idol,* 198 N.C. 56, 150 S.E. 665.

The documents offered in evidence by defendant as its Exhibits E and F are respectively the summons and complaint in an action for divorce which the intestate brought against the plaintiff in her individual character as his wife in the Superior Court of Forsyth County on 11 January, 1947, the day before his death.  The complaint alleges that the decedent and his wife had entered into a specified contract with reference to the future support of their three children.  Since the summons and the complaint were returned to the court unserved two days after the intestate's death and never formed the basis for any judicial action, they constituted at most mere admissions of the deceased, which the trial judge rightly rejected because their reception in evidence was barred by the specific rule of law excluding hearsay.

This conclusion is fully supported by *Dowell v. Raleigh,* 173 N.C. 197, 91 S.E. 849, and *Holmes v. Wharton,* 194 N.C. 470, 140 S.E. 93, recognizing and applying the rule which prevails in this jurisdiction that the admissions of the deceased are not competent against his personal representative in an action to recover damages for death by wrongful act.  The reasons for the rule were thus stated in *Dowell v. Raleigh, supra:* "The declaration of the intestate as to the condition of the wagon was incompetent.  It was not a declaration against interest, as at that time he had no interest to serve or disserve.  He had no cause of action himself, as his death was instantaneous, nor did he even have any interest

in this cause of action. It is one not known to the common law, but created by the statute, and the beneficiaries take, not by any inheritance or succession from him, but solely because they are named in the statutes as the recipients of the fund recovered for the death caused by the defendant's negligent or wrongful act. The cause of action never arose until the death of the intestate, and then not to him, but to those who are designated by the statute to take the fund recovered. They acquire their right by the statute alone, and not because of any privity with the intestate, for none exists between them, in any proper sense of the term." Though not pertinent to this case, it is observed, in passing, that the rule under consideration is now subject to a single statutory exception created by the Legislature in 1919 providing that "the dying declarations of the deceased as to the cause of his death shall be admissible in evidence" in actions for wrongful death. G.S. 28-173.

Exhibits A and D are duly authenticated copies of records of the Municipal Court of Winston-Salem reciting that on 7 October, 1943, the intestate was tried in such court on the criminal charge of nonsupport of his first and second born children; that he "entered a plea of guilty" and was "adjudged guilty"; and that he was thereupon ordered to pay the sum of $10.00 per week to the clerk of the court during the next succeeding fifteen years for the support of his first and second born children. There is no evidence in the record tending to show that this judgment ever controlled the contributions of the decedent to the support of his family outside of an allegation in Exhibit B set out below that such was the case during the brief period beginning 7 October, 1943, and ending 29 January, 1944.

Exhibit B was verified by plaintiff on the date last mentioned and is the original complaint in an action for alimony without divorce brought about that time by the plaintiff in her individual character against her husband, the intestate, in the Superior Court of Forsyth County. In this complaint, the plaintiff averred that the deceased abandoned the plaintiff on 26 September, 1943; that thereafter, namely, on 7 October, 1943, he was convicted of nonsupport in the Municipal Court of Winston-Salem and ordered to make payment for the support of his children as set out above; that from the date of the judgment in the criminal action down to the time of the verification of the complaint the intestate paid $10.00 per week for the support of his first and second born children in conformity to the order of the Municipal Court of Winston-Salem; that the plaintiff was again pregnant by the decedent and that the sum of $10.00 per week was insufficient for the support of the plaintiff, and the first and second born children, and the defraying of the expense incident to the future birth of the third child with which the plaintiff was then pregnant; and that the court ought to award the plaintiff alimony both

pending the action and on final hearing sufficient for the support of plaintiff and the children of her marriage with the deceased. Exhibit C is the original of an order signed by Judge H. Hoyle Sink on 7 February, 1944, in the action for alimony, making findings of fact in harmony with the allegations of Exhibit B and ordering the intestate to pay to the clerk of the Municipal Court of Winston-Salem as alimony pending the action for the support of plaintiff and his children the sum of $25.00 weekly, which was to include the payment of $10.00 mentioned in the judgment in the criminal action. Nothing in the recitations in Judge Sink's order or elsewhere in the record reveals that any process or notice was ever served on the intestate in the action for alimony without divorce, or that he ever appeared therein either in person or by counsel, or that he ever acquired any knowledge of the institution or pendency of the action or the rendition of the order for temporary support. Furthermore, it does not appear that any proceedings were had in the action after 7 February, 1944, or that the contributions of deceased to the support of his family subsequent to that date bore any relation whatever to the allowance for support specified in the order.

Exhibit G is the inventory of the estate of the intestate. It was filed by plaintiff in her representative capacity on 6 May, 1947, and reveals that the deceased left personal property worth only $110.33.

Since it does not appear that the court ever acquired any jurisdiction of the deceased by service or appearance in the action for alimony without divorce, Exhibits B and C are not admissible in evidence as a judicial record. In consequence, Exhibit C, the order for temporary alimony, is barred from admission at all events. *Rainey v. Hines,* 121 N.C. 318, 28 S.E. 410; 32 C.J.S., Evidence, section 647. Likewise, it is plain that the contents of Exhibit B, the complaint, cannot be received as admissions of the plaintiff in her representative capacity as administratrix because the complaint was drafted before her appointment and qualification. *Coble v. Coble,* 82 N.C. 339; *May v. Little,* 25 N.C. 27. Furthermore, it cannot be received on the theory that the plaintiff is beneficially interested in the litigation in her individual character for the reason that she shares in any recovery as widow of the deceased, and that by reason thereof the contents of Exhibit B ought to be received in evidence against the plaintiff in her representative capacity as administratrix as admissions of the real party in interest. The cause of action for death by wrongful act was created by the Legislature. Under the pertinent statutes, the widow and three children of James Garfield Hanks share equally and in severalty any damages recovered for his death. G.S. 28-149, 28-173. Hence, there is no basis for any contention that the children are in privity with the mother or that they have any joint interest with her in the matter in suit in a legal sense. Moreover, there

can be only one finding as to the pecuniary injury resulting from the death of the deceased. This cannot be one thing to the widow and another thing to the children. The admissions of the widow contained in Exhibit B were made without any authority from the children, and cannot possibly be received in evidence to affect the interest of the widow without prejudicing the interests of the children. For these reasons, the trial judge properly excluded Exhibit B under the rule that declarations are not receivable in evidence even against the declarant if it is impossible to admit them without prejudicing the rights of nondeclarants who did not authorize the making of the declarations, and are not in privity with the declarant, and have no joint interest with the declarant in the matter in suit. *In re Casada,* 228 N.C. 548, 46 S.E. 2d 468; 31 C.J.S., Evidence, section 320. The plaintiff did not testify on the trial. Thus, the question of the competency of Exhibit B for the purpose of contradiction does not arise.

It is noted here that the opinion of the majority concedes that no error was committed in rejecting Exhibits B and C.

Since it appears that Exhibits B, C, E, and F were rightly excluded under specific rules of law, we now take up the question of whether Exhibits A, D, and G meet the other test of admissibility, to wit: relevancy, which is, in essence, a matter of logic rather than law. We doubt that a more illuminating criterion of relevancy can be devised than the one implicit in the following quotation from 31 C.J.S., Evidence, section 158: "An offer of a party to prove a fact in evidence involves an assertion by him that such a relation exists in reason as a matter of logic between the fact offered and a fact in issue that the existence of the former renders probable or improbable the existence of the latter, and the relation thus asserted is termed relevancy."

It is indisputably clear that Exhibits A, D, and G bear no logical relationship to the issues of negligence and contributory negligence. In determining whether they are relevant to the issue of damages, we must examine the legal rules governing that issue.

When the Legislature created a cause of action for death by wrongful act, it decreed that "the plaintiff in such action may recover such damages as are a fair and just compensation for the pecuniary injury resulting from such death." G.S. 28-173. It has been settled by repeated adjudications that the measure of damages for wrongful death is the present worth of the net pecuniary value of the life of the deceased to be ascertained by deducting the probable costs of his own living and usual and ordinary expenses from the probable gross income derived from his own exertions based upon his life expectancy. *Rea v. Simowitz,* 226 N.C. 379, 38 S.E. 2d 194; *Coach Co. v. Lee,* 218 N.C. 320, 11 S.E. 2d 341; *White v. R. R.,* 216 N.C. 79, 3 S.E. 2d 310; *Carpenter v. Power Co.,*

191 N.C. 130, 131 S.E. 400; *Purnell v. R. R.,* 190 N.C. 573, 130 S.E. 313; *Gurley v. Power Co.,* 172 N.C. 690, 90 S.E. 943; *Coley v. Statesville,* 121 N.C. 301, 28 S.E. 482. The cost of the deceased's own living and his usual and ordinary expenses under this rule do not include his contributions to the support of his dependents, ·and such contributions are not deducted from gross earnings in calculating the net pecuniary value of his life. *Rigsbee v. R. R.,* 190 N.C. 231, 129 S.E. 580; *Roberson v. Lumber Co.,* 154 N.C. 328, 70 S.E. 630; *Carter v. R. R.,* 139 N.C. 499, 52 S.E. 642.

It necessarily follows that a trial court should admit in an action for wrongful death any evidence not excluded by some specific rule of law having a logical tendency to show either the probable gross income which would have been derived from the deceased's own exertions, or the probable cost ·of the deceased's own living and ordinary and usual expenses during the period he would have continued to live if his life had not been cut off by the wrongful act of the defendant. *Hicks v. Love,* 201 N.C. 778, 161 S.E. 394; *Burns v. R. R.,* 125 N.C. 304, 34 S.E. 495.

It is evident that Exhibit G, the plaintiff's inventory of the deceased's personal estate, standing alone, has no intrinsic relevancy to the facts in issue on the question of damages. The observations made in *Cooper v. R. R.,* 140 N.C. 209, 52 S.E. 932, 3 L.R.A. 391, 9 Ann. Cas. 71, where similar evidence was rejected, seem appropriate here: "If these papers should show a large estate, there are so many ways by which it could be explained otherwise than by the capacity of the deceased to accumulate money, and if it is small, there are so many and various ways it could be accounted for, consistent with the highest capacity to earn and acquire, that these admissions, we think, would tend rather to confuse than aid the investigation, and would open up a field of inquiry entirely too extensive and often foreign to the issue. We hold the papers to be irrelevant, and affirm the ruling of the trial judge on that question."

The defendant's position is not improved by combining Exhibit G and Exhibits A and D. Exhibit B was barred from admission by specific rules of law, and no other evidence was presented on the trial tending to show that the criminal judgment mentioned in Exhibits A and D controlled or limited the contributions of the deceased to the support of his dependents even for a day. It does not appear from the record that Exhibits A, D, and G have any logical tendency to prove or disprove any fact in issue in respect to deceased's probable earnings, or probable personal expenses, or probable contributions to the support of his dependents. Indeed, they leave these matters to speculation.

Moreover, the isolated fact that the intestate was convicted of nonsupport on a single occasion as set forth in Exhibits A and D is not admissible to show his character or habits. *Edwards v. Griner,* 42 Ga.

App. 282, 155 S.E. 789; Stansbury: North Carolina Evidence, section 95; Wigmore on Evidence (3rd Ed.), section 376.

In my judgment, the appellant has failed to establish the admissibility of any of the rejected papers. Hence, my vote is for an affirmance of the judgment of the trial court.

I am authorized to say that *Mr. Justice Devin* and *Mr. Justice Seawell* concur in this dissent.