Coal Co. v. Limb.

THE CHEROKEE & PITTSBURG COAL & MINING COMPANY v. JOHN LIMB, *as Administrator of the estate of Daniel Limb, deceased.*

1. MASTER AND SERVANT—*Death by Wrongful Act—Action by Parents—Excessive Verdict.* In an action brought for the benefit of the parents, as next of kin, to recover for the alleged negligent killing of their son, who was grown up, of full age, and living apart from them, but was unmarried, no proof was offered of the parents' financial condition, or that they had ever received any actual pecuniary benefits from the son during his life-time; nor was there any evidence showing a reasonable probability of pecuniary advantage to them from the continuance of the son's life. *Held,* That a verdict awarding them $1,500 as damages was excessive, and that under such evidence no more than nominal damages were recoverable.

2. EVIDENCE—*Jury.* The evidence of negligence produced upon the trial examined, and *held* to be sufficient to warrant the court in submitting the case to the jury.

*Error from Crawford District Court.*

THE material facts are stated in the opinion. Judgment for plaintiff, *Limb*, at the July term, 1890. The defendant *Company* brings the case to this court.

*Geo. R. Peck, A. A. Hurd, Robert Dunlap,* and *O. J. Wood,* for plaintiff in error.

*J. F. McDonald* and *W. R. Biddle* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: An explosion occurred on November 9, 1888, in Frontenac mine No. 2, owned and operated by the Cherokee & Pittsburg Coal & Mining Company, whereby Daniel Limb, an employé of the company, was killed. He was an unmarried man, and left surviving him David Limb and Hannah Limb, his parents, next of kin and heirs at law. This action was brought by John Limb, as administrator of the estate of Daniel Limb, deceased, against the company, for the benefit of his parents, to recover damages for the pecun-

iary loss which they sustained by his death.  It was alleged
in the petition that the death was caused by the negligence of
the company in permitting the accumulation in the mine of
dry, inflammable, combustible and explosive coal dust, which
was communicated with by a blast of powder, causing a gen-
eral explosion and the killing of Limb, who was at work in
the mine, and who was then in the exercise of due care.  The
company denied the allegations of the petition, and contended
that Limb's death was caused and materially contributed to
by his own negligence.  The trial resulted in a verdict in favor
of the plaintiff below for $1,500.  At the trial testimony was
given tending to show that dry coal dust is a dangerous and
explosive element in a mine, and that the danger may be al-
layed by properly sprinkling the mine with water.  Some tes-
timony was offered which tended to show that the persons in
charge of the mine were aware of the dangerous character of
the dust, and had sprinkled the mine to some extent, but had
not done so sufficiently to prevent the explosion.  The testi-
mony of the company was in direct conflict with that produced
by the plaintiff below, and tended to show that coal dust is
not an explosive, and that the company and its managers were
not negligent, as charged, and.that the injury and accident were
caused by the explosion of large quantities of gunpowder, care-
lessly ignited by Limb or some other of the miners.  The ex-
plosion which caused the death of Daniel Limb is the one
referred to in the case of the *Cherokee & Pittsburg Coal &
Mining Company v. Richard Wilson*, administrator, etc., just
decided.  The testimony respecting the condition of the mine,
the explosion, its origin and effects, and the knowledge of the
company in regard to the dangerous character of coal dust,
and what was necessary to overcome the danger, and also in
regard to its want of care, is substantially the same as in the
2. Evidence—          Wilson case.  It was there held that the testi-
jury.          mony, though not full or satisfactory, was suffi-
cient to take the case to the jury; and it must be so held in
this case.  Hence it cannot be held that the court erred in
overruling the demurrer to the evidence of plaintiff below, or

in failing to direct a verdict in favor of the company. Several errors are assigned on the admission and rejection of testimony. It is unnecessary to make special reference to these. We have examined them with care and find that the exceptions cannot be sustained.

It is contended that the verdict is excessive, and unsupported by testimony showing that the next of kin sustained pecuniary loss by the death of Daniel Limb. In this respect there is a fatal lack of testimony. It is not shown that the parents of the deceased ever received any support from him, nor that they were dependent upon him to any extent for support or assistance. Neither is there any evidence in the record to show their pecuniary condition. There is testimony showing that he was a robust man, who at the time of his death was capable of earning $80 per month, and one witness stated that he contributed to the support of his parents, but this statement turned out to be hearsay only, and no competent proof was offered that he ever contributed to their support, nor that the continuance of his life would have been of any pecuniary benefit to them. A witness stated that at one time the deceased borrowed $20 in order to make up a $100 sum which he proposed to send to his father, in Ohio, and that an order for that amount was inclosed in a letter addressed to his father, but the witness did not know whether the letter was ever mailed or sent to the father, or whether the father ever received the letter, and the defendant in error did not undertake to supply this necessary proof. This is an action for compensation only, and no damages can be recovered by the plaintiff below except for the pecuniary loss which the parents sustained by the death of the son. The burden was on the administrator to show that loss occurred. If there was no

1. Master and servant—death by wrongful act—action by parents—excessive verdict.

evidence that his life had been of actual benefit to the parents, or that any benefits might be reasonably expected by the continuance of his life, then no more than nominal damages could be recovered. (*Railroad Co. v. Weber*, 33 Kas. 543.) There must have been evidence either of actual benefits or those in expectation

before the jury can give substantial damages; and an attempt to assess such damages without proof would be to indulge in mere conjecture, which is not permissible. If the son had contributed anything in the past, there would be grounds for the expectation that he would have continued to contribute in the future; or if the son was a minor, the parents would have a legal right to the services of the son during his minority; but after majority, no such legal right exists, and the benefits thereafter would depend upon the capability of the son and his disposition to confer benefits on his parents. It is not shown that Daniel Limb was a minor, but it appears that he lived apart from his parents, was of full age, grown up, and capable of earning fair wages. The right of the parents to recover in such a case, and the nature of the proof required, was quite fully discussed by Mr. Justice BREWER in *Railway Co. v. Brown*, 26 Kas. 443. It was there said:

"It is not the loss of the decedent, but the loss of the survivors, which is to be estimated. That involves not merely the probable accumulations of the deceased, but the probability of the benefit of such accumulations inuring to the survivors. Where one who was the head of a family with minor children is killed, there is a reasonable certainty that his earnings if he had survived would inure directly to the benefit of the widow and children. When one dies without wife or child, with no one legally dependent upon him, and with only remote relatives as his next of kin, there is only a remote probability that his earnings, whatever they may be, would inure to such next of kin. . . . Where the deceased, leaving no wife nor child, leaves as his next of kin father or mother, and such father or mother is in good pecuniary condition, it is fair to say that his life would if survived have been of comparatively little value to them. In other words, his earnings would be used for his own pleasure or profit, and not go to the increase of their present good financial condition."

Whether the parents of the deceased are wealthy or dependent, or whether they were in the habit of conferring upon or receiving benefits from the deceased, does not appear. For all that is shown, they may be in good financial condition, without any necessity of help from their son, or any likeli-

hood of pecuniary advantage by his continued existence. If they had received any portion of his earnings, or if there was any reasonable probability of pecuniary benefit from the continuance of their son's life in the future, it could easily have been shown. In the absence of proof showing that the parents suffered a pecuniary loss by the death of their son, the allowance made in the verdict is clearly excessive. For this error there must be a reversal of the judgment, and a new trial.

Judgment accordingly.

All the Justices concurring.