POE v. RAILROAD.

(Filed May 25, 1906).

*Damages for Death—How Estimated—Annuity Act.*

> In an action to recover damages for injuries causing death, the court
> erred in permitting the jury to consider the provisions of chapter
> 347, Acts 1905 (the Annuity Act), for the purpose of ascertain-
> ing the present value of the intestate's life.

ACTION by C. C. Poe, Administrator of Willie E. Brown,
against Raleigh & Augusta Air Line Railroad Company,
heard by *Judge G. S. Ferguson* and a jury, at the November
Term, 1905, of the Superior Court of CHATHAM.

Plaintiff sued to recover damages of the defendant for neg-
ligently causing the death of his intestate. The negligence was
admitted and the only question presented in the record re-
lates to the question of damages. There was no objection to
the general rule for the assessment of damages laid down by
the court, but the defendant excepted because the court in-
structed the jury that the Legislature at its last session had
provided a table to be used in ascertaining the present value
of an annuity. The court read chapter 347 of the Public
Laws of 1905 to the jury and added: "These methods are
submitted to you as a means by which you may calculate the
present value of the net income which the intestate would
have derived from the labors of his life, if he had not been
killed." The court instructed the jury as to the rule of dam-
ages laid down in *Watson v. Railroad,* 133 N. C., 188, and
also as to the method of ascertaining the present value of the
life of the deceased as stated in that case. There was a ver-
dict and judgment for the plaintiff and the defendant ap-
pealed.

*H. A. London & Son* for the plaintiff.

*Day & Bell, Womack, Hayes & Bynum* and *Murray Allen* for the defendant.

Walker, J., after stating the case: After giving full consideration to the able and ingenious argument of the plaintiff's counsel, we think the court erred in permitting the jury to consider the provisions of chapter 347 of the Acts of 1905 for the purpose of ascertaining the present value of the intestate's life. The rule for estimating the damages to be allowed, in such cases as this one, has been long settled and we have no idea that the Legislature intended by the chapter above mentioned to change the rule so firmly established. That act was intended to apply strictly to an annuity which has a well defined meaning in the law. "An annuity is a stated sum payable annually unless otherwise directed. It is not income or profits, nor indeterminate in amount, varying according to the income or profits, though a certain sum may be provided out of which it is to be payable; and hence, when a testator gave a beneficiary the interest upon a certain sum, payable annually, it is not an annuity, but merely an ordinary legacy, for it is not a stated sum, but may be more or less according to the earnings of the capital and is merely interest or income." 1 Words & Phrases Judicially Defined, p. 405. "There is a distinction between income and annuity. The former embraces only the net profits after deducting all necessary expenses and charges. The latter is a fixed amount directed to be paid absolutely and without contingency." *Ibid.* "The income or interest of a certain fund (bequeathed) is not an annuity, but simply profits to be earned, and although directed to be paid annually, that relates only to the mode of payment and does not change the character of the bequest." *Ibid. Bartlett v. Slater,* 53 Conn., 102; *Booth v. Ammerman,* 4 Bradford, 129. The Act of 1905 provides a method by which, in connection with the mortuary table, the present cash value of an annuity may be ascertained. It

recognizes the very distinction we have drawn between annuity and income, for in section 3 it provides that when a person is entitled to the use of a sum of money for life or for a given time, the interest thereon for *one year* may be considered *as* an annuity and the present cash value be ascertained as in the case of a strict annuity. But it will be observed that the amount, even in that case, is fixed as it is the interest for one year. In the first section, the act refers to a strict annuity, an invariable sum due by the year and payable annually, and in the third section it refers to a sum now in hand and not one to be hereafter earned, as in our case. The first section would seem to have provided for those cases where a certain and definite sum, unchangeable in amount, is given by one person to another to be paid annually, without regard to the fund out of which it is to be paid or to any interest of the annuitant in the capital, and the third section permits reference to the fund itself (at present in hand), so far as it is necessary to ascertain, by the interest upon it for one year, what the annual sum to be paid shall be. But the entire act shows that it was not intended to apply to an income or to any other variable quantity. The rule which the act prescribes is almost the exact opposite of that which this court has hitherto laid down as applicable to such cases as this one, and its consideration by the jury in connection with the latter rule would tend to confuse them, rather than enable them to determine more approximately or with greater accuracy than under the existing and long standing rule, the true value of the life in question. In ascertaining by the net income what is a fair and just compensation for the pecuniary injury resulting from the death, under Lord Campbell's Act, as it is called (Revisal, sections 59 and 60), we are dealing with something not now in possession, but which is to be earned in the future, and, therefore, it is that this court has always kept said fact in view when formulating a rule for the assessment of damages in such cases. The terms in which

that rule has been framed imply necessarily that the net income will, or at least may, be a changeable quantity, a certain amount in one year and another and quite different amount in the next, as the jury are required by it to consider the capacity of the intestate to earn money, which may increase or decrease owing to his age and other circumstances, and the other elements which enter into the calculation under that rule are also of such a nature as to render the annual income of a series of years variable in amount. The total amount or net accumulated income, upon which the compensation is based, must be ascertained as of the time when, according to his expectancy, the intestate would have died in due course of nature, but this total may be composed of many annual incomes of different amounts. The present value of that sum, whatever it may be, is what the jury should allow in the way of damages. This court has not prescribed any "hard and fast rule" by which to bind the jury in making the estimate of what sum should be given or to require them to make the assessment of damages in any particular way. A general rule for the guidance of the jury was suggested in *Pickett v. Railroad,* 117 N. C., 616, stating more definitely a proper method of calculation than was done in the previous cases of *Kesler v. Smith,* 66 N. C., 154, and *Burton v. Railroad,* 82 N. C., 504, the age, health, strength, skill, industry, habits and character of the deceased being, as then said, elements of importance to be considered in fixing the amount of compensation. That case was followed by *Coley v. Statesville,* 121 N. C., 301; *Benton v. Railroad,* 122 N. C., 1007; *Mendenhall v. Railroad,* 123 N. C., 275, and perhaps others, in all of which the general rule stated in *Pickett v. Railroad* was recognized and applied; the end of it all being to enable the jury to ascertain the net accumulated income which the deceased might reasonably be expected to have earned during the period of his expectancy, if death had not ensued. The charge of *Judge O. H. Allen* in *Mendenhall v. Railroad,*

*supra,* which was adopted by this court as containing a correct statement of the principle governing such cases, is commended as a safe one for guidance, coupled with the usual reference to the mortuary table. The rule was again considered in *Watson v. Railroad,* 133 N. C., 188, and approved. It was there suggested by the court that while the judge was not required to do so and his refusal so to do in that case was held not to be error, yet that he might with propriety have submitted to the jury the arithmetical rule contained in the defendant's prayer for instructions, as illustrative of the general method of measuring the damages. A review of all that has been said upon this subject leads us to the conclusion that no special formula has yet been prescribed as alike applicable to all cases and as one that should invariably be used in trials. The presiding judge may select, from the several forms which have been used, the one he may think will inform the jury of their duty in the premises, or he may use his own form of expression for that purpose, the object at last being to assist the jury to arrive as near as may be at a correct estimate, and much, therefore, will depend upon the nature of the case and a great deal will be left to the intelligence and sound sense of the trial judge; but to introduce a new and foreign element into the computation, such as the annuity act, passed evidently for a different purpose, would tend to great confusion and render uncertain the rule which has been for many years, and is now, reasonably well understood. The present value of the net accumulated income to be ascertained upon the principles heretofore stated by this court in the cases cited, is the safest and best rule to be followed. *Pickett v. Railroad, supra.* We do not think this rule, long since adopted, has been, or was intended to be, modified in the least by any subsequent legislation.

There was error in the charge of the court for which a new trial is awarded on the issue as to damages. The verdict as

to the first issue will stand. It is not necessary tò consider the other assignments of error as they become immaterial by our ruling and may not again be presented.

New Trial.