## YELLOW CAB CO. v. NICK MALOAF AND OMAR ABED, Admrs.

Western Section.  November 30, 1925.

Petition for Certiorari overruled by Supreme Court March 13, 1926.

1. **Appeal and error.  Appellate court will not weigh the evidence.**
   An appellate court does not weigh the evidence to ascertain where the preponderance lies.  If there is any material evidence upon which to base the verdict, the verdict will be sustained.

2. **Appeal and error.  Assignment of error that does not comply with the rules of the court of appeals will not be considered.**
   Before the appellate court will consider an assignment of error it must comply with the rules of the court.

3. **Damages.  Plaintiff is entitled to nominal damages if proof shows his intestate was negligently killed.**
   In an action to recover damages for a negligent killing, held that where the proof showed deceased was negligently killed, the plaintiff is then entitled to nominal damages even though he failed to prove any pain or mental suffering or condition or state of deceased's health at the time he was killed.

4. **Appeal and error.  A cause will not be reversed because of the misuse of a word in the instructions if the defendant was not prejudiced thereby.**
   In an action to recover damages for a negligent killing where the court in an instruction used the word "burden" when he should have used the word "weight," held that the error was not prejudicial and was not a reversible error.

5. **Executors and administrators.  The appointment of an executor or administrator is not subject to collateral attack.**
   In an action by administrators to recover damages for wrongful death where it was assigned as error that the record did not show that the administrators were properly appointed, held that the appointment could not be collaterally attacked.

6. **Appeal and error.  Bill of exceptions must show that it contains all of the evidence submitted.**
   Where a bill of exceptions failed to show that it contained all the evidence submitted upon a motion for a new trial, the error is fatal and the cause will not be reversed.

7. **Damages. $2,000 held not excessive for death of a Syrian peddler.**
In an action to recover for wrongful death where the evidence showed that the deceased was a Syrian peddler and earned from $30 to $40 a week, held $2000 not an excessive verdict.

8. **Appeal and error. Remittitur, is in discretion of the trial judge.**
In this action to recover for wrongful death where the jury returned a verdict for $3,000 and the trial judge ordered a remittitur of $1,000, held that the matter of remittitur was within the discretion of the trial judge and will not be disturbed by the appellate court.

Appeal in Error from Circuit Court, Shelby County; Hon. Ben L. Capell, Judge.

Affirmed.

Lake Hays, of Memphis, for plaintiff in error.

D. B. Puryear and T. R. Acklen, of Memphis, for defendant in error.

OWEN, J. Nick Maloaf and Omar Abed, as administrators of the estate of Abed Abd-Rahman recovered a judgment in the circuit court of Shelby county for the sum of $2,000.

The intestate was killed on the corner of Second and Linden streets, by being struck by a taxicab operated by the defendant Yellow Cab Company on December 17, 1924. The declaration charged the negligent operation of the taxicab by the agent of the defendant company. There were three pleas filed by the defendant: (1) not guilty; (2) contributory negligence; and, (3) that the plaintiffs had never qualified as administrators in the probate court of Shelby county and that they did not have the right to administer the estate of Abd-Rahman.

The deceased was killed about 8:40 P. M. The defendant's taxi driver, being one T. F. Jackson, had gone from the Claridge Hotel, located on Main street, to the First Methodist Church located on the corner of Poplar and Second street, some four blocks from the Claridge Hotel. The taxicab driver there picked up a passenger, being the Rev. L. L. Jones of Paris, Tennessee, who instructed the driver to take him to the Union Station. Rev. Mr. Jones desired to leave Memphis on the 8:45 or 8:50 P. M. train, for Paris. The taxicab driver drove south on Second street from the Methodist Church, Second street being one of the principal thoroughfares of Memphis running north and south. The Union Station is about a mile and a quarter or a mile and a half from the Methodist Church where Mr. Jones became a passenger. Linden street runs east and west, and is something like a mile south of the Methodist Church and within a few blocks of the Union Station.

There is conflict as to how the accident happened in which the intestate lost his life. The plaintiffs called as witnesses Walter Sewell, colored, and Mrs. Durelle, both of whom lived near the scene of the

accident. The defendant had as its witnesses the chauffeur Jackson, the passenger Rev. L. L. Jones, and a young boy by the name of Eugene Kerr. Evidently the deceased was hit very violently. By the plaintiffs it is shown that he was knocked about forty feet, while the defendant's testimony was that he was knocked down and fell under the radiator, the car stopping before it cleared his body. The intestate's skull was badly crushed, one of his arms was broken, he received many cuts on his face, one eye was closed, one of his lungs was so badly injured that the short time he lived after the accident (about two hours) he breathed very heavily from this injured lung. He never regained consciousness. The plaintiffs' witness Sewell lived on the corner of Linden and Second streets, on the west side of Second and south side of Linden. He was in the act of leaving home and had gone out a side entrance, which would make him approach Second street. He testified that there was a big car coming down Linden street, east and the Yellow Cab was coming from the north, going south on Second street; about the time the big automobile got to the middle of Second street the Yellow Cab, which appeared to be in great haste, cut around the rear end of the automobile; that the deceased was going west on the south side of Linden street; that he had just crossed Second street and as he went to step on the sidewalk the Yellow Cab struck him; that it knocked the deceased clear of the ground and he fell in front of the witness's gate which opened into Second street. He testified that the taxi was running about forty miles an hour. This witness testified that he had experience in operating a Ford automobile and could judge the speed of automobiles.

Sewell is corroborated to a certain extent by Mrs. Durelle who lived next door to him. She did not witness the accident but Sewell called for her to bring a light and she rushed to the deceased before he was moved and before the taxi driver and his passenger, according to her testimony, got out of the taxi. The witness Sewell and Mrs. Durelle are contradicted by the chauffeur. Rev. Mr. Jones did not see either the colored man or Mrs. Durelle that he could recall when he testified. According to the testimony of Jackson, the deceased was going east on the south side of Linden street until he came to the sidewalk on Second street. He thereupon turned south and walked south on the west side of Second street for about eighteen or twenty feet. That the taxicab had crossed Linden street and was running within about two and a half feet of the curb and the deceased just suddenly jumped in front of the taxicab when the same was within two or three feet of him and it was impossible to stop the taxicab. According to the testimony of Mr. Jackson, it would appear that the deceased was practically guilty of suicide.

This evidence was submitted to the jury, and after the court charged the jury it returned a verdict in favor of the plaintiffs for $3,000. There was a motion for new trial, and all the grounds were overruled, except one as to the verdict being excessive. This ground was sustained to the extent of $1,000, and the verdict was ordered to be reduced by a remittitur from $3,000 to $2,000. The plaintiffs accepted this remittitur under protest and the plaintiffs appealed and has assigned error upon the action of the court in ordering the remittitur. The defendant excepted to the motion for new trial being overruled, prayed and was granted an appeal to this court, perfected the same, had a proper bill of exceptions signed and filed and has assigned seven errors in this court.

The first is, there is no evidence to support the verdict.

Second, the verdict was excessive.

The third is, the court erred in refusing to grant a new trial on the ground that the verdict was against the greater weight and preponderance of the evidence.

This assignment is overruled and disallowed because this is an appellate court and this court does not weigh the evidence to ascertain where the preponderance lies. If there is any material evidence upon which to base the verdict, this court will sustain the verdict of the jury, and in looking to the evidence it is the duty of this court to consider it in its most favorable light in behalf of the plaintiff, who was successful in the court below.

The fourth, fifth, sixth and seven assignments are as follows:

"Fourth: The court erred in refusing to give defendant's special instruction No. 2, which is as follows: 'The court instructs the jury that if you find from the preponderance of the evidence that no pain and suffering was proven and no condition of the deceased's health was proven, then no amount can be given for the plaintiff and your verdict should be for the defendant.'

"Fifth: The court erred in instructing the jury as follows: 'It is for you to consider all the evidence and say gentlemen of the jury where the burden of proof is.'

"Sixth: The court erred in refusing to exclude the administrators from this suit.

"Seventh: The court erred in refusing to grant a new trial upon the ground of newly-discovered evidence, shown by a letter setting out the unwillingness of the widow, a resident of Jerusalem, Palestine, that the plaintiffs below prosecute the suit as administrators, and her desire to handle the matter through her attorney, the letter being received by the Yellow Cab Company at Memphis after the case was tried."

The fourth assignment of error does not comply with the rules of this court as announced and published in 151 Tennessee, page 815,

and being subsection 2 of section 11, as follows: ''A statement of the errors of fact or law relied upon to reverse or modify the same, showing specifically wherein the action complained of is erroneous, and how it prejudiced the rights of the appellant, or plaintiff in error, with references to the pages of the record where the ruling of the court on matters constituting errors of law appeared; and, in case it is an error of fact, to the pages of the record where the testimony relied upon to sustain the same is to be found..''

And, furthermore, this special request is not a sound and correct statement of the law. If the proof should have shown that the deceased was negligently killed by the defendant, and had the plaintiff failed to prove any pain or mental suffering or the condition or state of the deceased's health there would have been some liability—nominal damages at the very least—and this assignment is overruled.

The fifth assignment is a short excerpt from the court's charge. This assignment does not comply with the rule we have quoted as to the fourth assignment; however, we have carefully read the entire charge of the court, and while the court evidently intended to use the word ''weight'' when he used the word ''burden'' in the excerpt complained of, yet the defendant was not prejudiced by the error, and this assignment is overruled.

As to the sixth and seventh assignments of error, there is nothing in the record upon which to base them, nor is there anything upon which to found the sixth assignment. The record shows that the administrators were properly appointed by the probate court, which is a court of competent jurisdiction of Shelby county, and their appointment cannot be collaterally attacked. Franklin v. Franklin, 7 Pickle, 119; Turnpike Co. v. Puryear, 8 Cates, 126.

As to the seventh assignment of error, it appears that the court heard this newly-discovered evidence. The bill of exceptions fails to show that this was all the evidence submitted upon the motion for new trial, and of course this is fatal, but what was submitted was immaterial and incompetent. On the motion for new trial the defendant presented a letter purporting to be from one Mr. Gelat, a lawyer in Jerusalem, making inquiry as to whether or not he could adjust this litigation with the defendant. There is no error in overruling the motion on the ground of newly-discovered evidence.

As to the question of there being any material evidence, we have stated some of the material facts proven by the plaintiff. The jury accepted the plaintiff's theory of the case, and we find material evidence to sustain the verdict and the first assignment is overruled.

As to the second assignment, we do not know why the court upon the motion for new trial reduced the judgment from three to two thousand dollars, but the court had seen all of the witnesses, heard them testify, acted as the thirteenth juror, and after a fair and full

consideration he concluded that the judgment was excessive to the amount of $1,000. Defendant's counsel states in his brief the reasons given by the trial judge in ordering this remittitur. There is nothing in the record to show why the remittitur was ordered, except that the verdict was excessive and the court's order in directing the remittitur. He gave no reason, so far as the record shows, why he ordered it, or upon what grounds he based his judgment in ordering and directing a remittitur.

The deceased was a Syrian from the land of Palestine. He had been in this country some four or five years. He had a wife and a son in his native country. He was fifty-three or four years of age, very energetic, and earned from thirty to forty dollars per week. He was a peddler and sold fancy work made by his fellow countrymen. He could not speak the English language very well. His habits in regard to industry and sobriety were good. He had a good line of customers and he was a hard worker. One of the witnesses said that he was an ''early riser, he attended strictly to his business, he was just an all-round good fellow in his morals as well as a business way.'' There was no proof that he had ever been sick since he had been in this country, and being able to work practically every day, and being engaged in a business that earned him from thirty to forty dollars a week, we are of opinion that the verdict is not excessive.

In the case of Davidson-Benedict Co. v. Severson, 109 Tenn., 527, an opinion by the late Chief Justice Neil, a long list of Tennessee cases is collated, which deal with the elements of damages in death cases. These various cases, decided by the Supreme Court of Tennessee, summed up in their final analysis, announce the following:

''In the first class are embraced damages for the mental and physical suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries.

''In the second class of cases is embraced the pecuniary value of the life of the deceased: Railroad v. Wyrick, 99 Tenn., 500; Collins v. Railroad, 9 Heisk., 851; Railroad v. Stevens, 9 Heisk., 12.

''To be determined—

''(a)   Upon a consideration of his expectancy of life, his age, condition of health and strength. Railroad v. Spence, 93 Tenn., 173; Railroad v. Stacker, 86 Tenn., 343.

''(b)   Capacity for labor, and for earning money through skill in any art, trade, profession, occupation or business. Railway Co. v. Howard, 90 Tenn., 144; Bridge Co. v. Barnes, 98 Tenn., 401; Railway v. White, 5 Lea, 540.

''(c)   And his personal habits, as to sobriety and industry. Railroad v. Prince, 2 Heisk., 580.

''All modified, however,

"By the fact that the expectancy of life is at most only a probability, based upon experience, and also by the fact that the earnings of the same individual are not always uniform. Railroad Co. v. Spence, 93 Tenn., 173."

In the case of Railroad v. Berry, 118 Tenn., page 582, it was held that a verdict for $4,000 is excessive and there must be a remittitur of one-half of it or a new trial be granted in an action against the street railway company for a wrongful death, where the evidence shows the decedent was afflicted with dropsy; that his life could have lasted but a very few years, with earning power constantly decreasing and probably soon ceasing altogether, with the progress of the disease. That he never recovered his senses after the accident, and hence did not suffer consciously; and there was an entire absence of wantonness on the part of defendant's or its servants.

In the Berry case the deceased was earning about sixty or seventy dollars a month. That case was decided by the Supreme Court at Jackson at its April Term, 1907. Of course, at that time sixty or seventy dollars per month had a greater purchasing power than thirty or forty dollars per week would have at the time the deceased was killed; while, on the other hand would not have nearly as great purchasing power at this time as it would in 1907.

We are satisfied that the verdict, under the facts of the instant case is not excessive. It results that all of the assignments of error of the defendant are overruled and disallowed.

On the question of the remittitur ordered by the trial judge, he was not satisfied with the amount of the verdict. He had heard all of the witnesses testify, and he could only approve a judgment to the extent of $2,000. There was some proof in the record that the deceased was guilty of remote contributory negligence. Probably the jury took this into consideration in arriving at the verdict of $3,000, but we are loath to disturb the judgment of the lower court in ordering the remittitur, and we are of the opinion that the remittitur should not be restored, and plaintiff's assignment of error is overruled and the judgment of the lower court is affirmed. The plaintiff will recover of the defendant $2,000 with interest from the date of the rendition of the judgment in the lower court, and all of the costs of the cause, for which execution will issue.

Execution will issue against the defendant's surety on appeal bond for the costs and damages incident to the appeal.

Senter and Heiskell, JJ., concur.