Mary L. Chapman, Administrator of Estate of John E. Chapman, Deceased, Appellant, v. Gulf, Mobile and Ohio Railroad Company, Appellee.

Gen. No. 9,649.

614

Opinion filed May 26, 1949.
Released for publication June 21, 1949.

LONDRIGAN & LONDRIGAN, of Springfield, for appellant.

HENRY A. CONVERSE and MILES GRAY, both of Springfield, for appellee.

MR. PRESIDING JUSTICE DADY delivered the opinion of the court.

This suit was brought by plaintiff appellant as administrator of the estate of John E. Chapman, deceased, to recover damages allegedly resulting from the death of John E. Chapman, on August 28, 1945, caused by a freight train of defendant colliding with an automobile driven by George Luers, in which automobile Chapman was then riding as a guest or passenger.

The verdict of a jury found defendant not guilty. Plaintiff's motion for a new trial was denied and judgment for defendant was entered on such verdict. Plaintiff appeals from such judgment. Defendant has assigned cross error.

The amended complaint charged the defendant with general negligence in operating the train in excess of the twenty miles per hour limit fixed by the Illinois Commerce Commission, failure to ring a bell or blow a whistle on the engine to give warning of the approach of the train, failure to maintain a lookout, operating the train at a dangerous and excessive rate of speed, and failure on the part of the defendant's watchman to give any sufficient warning of the approach of the train. The answer of defendant denied all charges of negligence.

At the conclusion of all of the evidence offered by the plaintiff, the defendant moved for a directed verdict in favor of defendant, but, as stated, the trial court denied such motion. The defendant offered no evidence.

The engine of defendant's westerly bound freight train ran into the right side of the Luers automobile at a time when such automobile was being driven north on Fifth street in Springfield, Illinois, and across the tracks at a railroad crossing. Fifth street ran north and south. Defendant's railroad ran in a northeasterly and southwesterly direction and crossed Fifth street "at an angle." It was stipulated that on the day in question the speed limit permitted freight trains across such crossing was twenty miles per hour.

In the pleadings it is admitted that on the night in question, while in the business section of Springfield, Chapman "either requested or consented" to Luers driving Chapman to Chapman's home, that the collision occurred while on such trip from the business section to Chapman's home, and that such trip was for the sole and only benefit of Chapman, as Luers lived in an opposite part of the city.

The only eyewitnesses to the collision were George Luers and Joseph Lanzotti, both of whom testified for the plaintiff.

Luers testified he had known Chapman for about 40 years, that about 2:00 a. m. on the night in question

he met Chapman in a night club in or near Springfield, where Luers then drank three high balls and saw Chapman drink one bottle of beer, that he, Luers, felt the effect of the liquor but neither of them was intoxicated, that he and Chapman then went to a restaurant in the business district of Springfield where he, Luers, ate a hearty meal, that Chapman had no automobile so Luers proceeded to drive Chapman to the latter's home, that his brakes were in good condition, that he then drove north on Fifth street toward the crossing, that he was familiar with the crossing, that the first warning he had that a train was approaching was when he was about 100 feet south of the crossing and going about 30 miles per hour and at a time when he was leaning toward and looking at Chapman, that he then saw what appeared to be a light between him and two automobiles parked on the east side of Fifth street and south of the crossing, and then realized the light must be that of a train, that Chapman then made an outcry, that he could not swear he heard any whistle or bell, but heard no noise, that after he saw the flash of light he kept on going and accelerated his speed, that he had a choice of three things: try to stop his automobile, or try to turn to the right on a side street, or try to get across the track ahead of the train, that he tried to cross ahead of the train and in so doing "made a mistake," and that before he saw the flash of light he did not see any one waving a lantern because he was looking toward Chapman.

Lanzotti testified that he was driving his automobile south on Fifth street, that as he approached the crossing the first warning he had that a train was approaching was a light flashing across the crossing from the engine, which light he first saw when he was about a block north of the tracks, that he did not see or hear any bell or whistle although the window on the left side of his automobile was open, that he then just coasted along very slowly until he was about 45 or 50

feet from the tracks and stopped his automobile at a time when the engine was just about starting in the intersection, that he then noticed the Luers automobile entering the ''track'' from the south, and all of a sudden, in a split second, the collision took place, that the train and the Luers automobile were each going about 25 miles per hour, that just as he stopped he saw the crossing watchman on his right but did not hear any one blow a whistle, that after the accident the watchman crawled through the train from the south with his lighted red lantern, and just before the crash he saw the watchman make a quick lurch to the side at a time when the Luers automobile was very close to the watchman.

The defendant does not contend that Chapman was guilty of contributory negligence.

The defendant has assigned as cross error that the trial court erred in refusing to direct a verdict for the defendant at the conclusion of all the evidence on the ground that the conduct of Luers just before and at the time he drove upon the tracks in front of the train was the sole proximate cause of the collision and death of Chapman.

Defendant cites *Moudy v. New York, C. & St. L. R. Co.*, 385 Ill. 446, and *Whitley v. Powell*, 159 F. (2d) 625. We do not consider either case decisive. In the *Moudy* case the plaintiff was driving his car when injured and was held guilty of contributory negligence as a matter of law. In the *Whitley* case the plaintiff's chauffeur was held guilty of contributory negligence attributable to the plaintiff.

We will assume that Luers was guilty of contributory negligence. Considering all of the evidence, it is our opinion that we cannot properly say as a matter of law that the negligence of Luers was attributable to Chapman, for it is our opinion that the evidence shows that Chapman was merely a passenger or guest in the Luers car. (See *Berg v. New York Cent. R. Co.*,

391 Ill. 52, 62. See same case in 323 Ill. App. 221, 45 C. J. p. 1032; 5 Amer. Juris. pp. 780, 781.)

The undisputed evidence shows that the train was traveling in excess of the speed limit of 20 miles per hour. It is our opinion that we cannot properly say as a matter of law that the negligence of both defendant and Luers did not combine to cause the injury. Therefore it is our opinion that the trial court did not err in denying the motion for a directed verdict.

The deceased and T. Audrey Chapman were married on December 11, 1940, in Glendale, California. No child was born of the marriage. At the time of the marriage and thereafter the mother and grandparents of the deceased lived in Springfield.

The widow's testimony was taken by way of deposition on interrogatories submitted by plaintiff and on cross interrogatories submitted by the defendant.

The widow testified that she and the deceased lived together in California from the time of their marriage until October 24, 1943, when he returned to Springfield and did not thereafter return to California, that she continued to live in California until his death, that while they were living together in California he was steadily employed and turned over to her all his wages, out of which moneys she paid the household expenses and deposited the balance in a bank account in their joint names, that after going to Springfield he sent her $100 in January 1944, to pay for Christmas presents and her living expenses, and that thereafter he sent her from $60 to $75 per month.

In answer to cross interrogatories and without objection she then testified that when the deceased left her in October 1943, he went to Springfield on the death of his grandfather because he didn't think his aged grandmother could stand up under the shock of the death of the grandfather.

In answer to further cross interrogatories, and over the objection of plaintiff, she then testified that the first

years of her married life were happy, and that there was no change in his attitude toward her, but that on October 1, 1943, while intoxicated, he struck her and pushed her head in a toilet bowl and as a result she was unconscious for about 45 minutes, and that on other occasions when drinking he had struck her less severely. Plaintiff now makes no objection to such testimony.

In answer to other cross interrogatories and over the objection of plaintiff she then testified that when the deceased left for Springfield he told her he did not love her any more, but that as soon as he returned to Springfield he phoned her that he did not want her to get a divorce, that in August, 1944, she filed a divorce proceeding in California, that the deceased consented to appear in such proceeding and let the matter go by default, that on May 18, 1944, she obtained an interlocutory decree of divorce in such proceeding, and that in such proceeding she did not ask for alimony.

Plaintiff now contends that such testimony was immaterial and irrelevant.

The precise question does appear to have been considered by a court of review in this State.

Inasmuch as such interlocutory decree never became final, T. Audrey Chapman became the deceased's widow on his death, and it cannot be properly assumed by us that they would not have become reconciled before the decree became final. If the defendant is guilty as charged then such widow was entitled to at least nominal damages, but before she was entitled to more than nominal damages it was necessary to prove that she had reason to believe she would receive from him some support or pecuniary aid had he continued to live. (*Goen v. Baltimore & Ohio S. W. R. Co.,* 179 Ill. App. 566, 570.)

In *Peterson v. Pete-Erickson Co.,* 186 Minn. 583, 244 N. W. 68, it was held proper to show that the wife contemplated divorce because of the habits of the plain-

tiff's husband. In *Texas & P. Ry. Co. v. King* (Tex. Civ. App.), 18 S. W. (2d) 757, it was held proper to show that the widow and the deceased had separated and that she had commenced divorce proceedings.

It is our opinion that the testimony objected to was competent and material on the question of damages and in mitigation of damages.

Defendant's instruction 12 started out by telling the jury that if they believed from the evidence that Luers was driving Chapman to his home, and if they believed that such act was for the sole benefit of Chapman, then Chapman accepted and constituted Luers as his agent in and for such act or service. The instruction then told the jury that if they believed Luers was negligent, and that if his negligence caused or contributed to cause the injury, ''no matter in how small degree,'' the jury should find the defendant not guilty. This instruction in effect erroneously told the jury that Luers was the agent of Chapman, and therefore in effect directed a verdict of not guilty. As heretofore stated, it is our opinion that the evidence shows that Luers was not acting as the agent of Chapman.

Defendant's instruction 5 told the jury that Luers and Chapman were bound to know that if they came into collision with the train they might damage the train and injure passengers and employees of defendant. This instruction was prejudicially misleading and argumentative, and was also erroneous in assuming agency.

Defendant's instruction 11 was erroneous in defining wilful and wanton misconduct. The plaintiff did not charge wilful and wanton misconduct and the question of such conduct was not in issue.

Defendant's instruction 7 erroneously assumed that there was some evidence that the crossing watchman was in plain view of persons approaching from the south, and that he was giving signals or warnings of the approach of the train. There was no evidence on which to base such instruction.

Prior to the trial the plaintiff made a motion for an order under subsection 8 of rule 17 of our Supreme Court directing defendant to show cause why it should not produce for plaintiff's inspection a statement made by Luers on August 28, 1945, to a claim agent of the defendant and taken and transcribed by a shorthand reporter. The motion was supported by the affidavit of plaintiff's counsel in which it was stated on information and belief that said document contained a statement by Luers as to what Luers said to Chapman immediately before the collision, that Luers did not remember such statement made to him by Chapman, but that affiant was informed and believed that if Luers was permitted to inspect said statement to refresh his recollection Luers would be able to testify as to what Chapman then said to him. Defendant's answer to the motion admitted that its claim agent and a shorthand reporter took such statement from Luers and that it had the transcription thereof in its possession, but objected to the allowance of the motion. The court denied the motion and plaintiff claims such ruling was error.

Rule 17 provides in pertinent part:

"(1) Any party may . . . apply for an order directing any other party . . . to file a sworn list of all the documents, including photographs, books, accounts, letters and other papers, which are, or which have been, in his possession or power, material to the merits of the matter in question in said cause. . . .

"This rule shall not apply to memoranda, reports, or documents prepared by or for either party in preparation for trial, or to any communication between any party or his agent and the attorney for such party.

". . .

"(8) Any party may at any time move for an order directing any other party or person to show cause why he should not produce specified documents, relating to the merits of the matter in question in said cause, for inspection and to be copied or photographed,

where no list of documents has been demanded or where such documents have not been listed under Section (1) of this rule, or produce . . . articles or property relative· to the merits of the said matter . . .''

*Brignall v. Merkle,* 306 Ill. App. 137, is the only Illinois case decided since the passage of the Civil Practice Act which has been called to our attention in which the effect of rule 17 has been discussed. In that case it was held that the plaintiff could not be required to list documents that might be used by the plaintiff ''simply for the purpose of impeaching the testimony of defendant.'' .

In 166 A. L. R. 1429, is an annotation on the subject of discovery and inspection. We do not consider the cases therein cited as being very helpful because of the difference in the statutes and rules of court covered by the citations.

In our opinion rule 17 is intended to afford parties an opportunity to obtain discovery of documentary evidence material or relevant to the questions involved in the litigation.

What Chapman said, if anything, immediately before the collision, at a time when he apparently first became aware of the approach of the train, was ''material'' and ''relevant'' as a part of the *res gestae* on the question of whether he was then in the exercise of reasonable care for his own safety. However, what Luers told the defendant's claim agent after the accident was mere hearsay, not binding on either the plaintiff or defendant, and not in itself ''material'' or ''relevant'' to the merits of the matter in question in said cause. In our opinion the mere refreshing of the recollection of a witness is not ground for the discovery of such a document under rule 17.

It is also our opinion that, notwithstanding the fact that a suit had not been commenced before the statement was taken, such statement was in effect

a report or document prepared for the defendant in preparation for trial,—an anticipated trial,—within the meaning of the exception clause of subsection 1 of rule 17.

Therefore it is our opinion that the trial court did not err in denying the motion for the production of such document or report.

Because of the giving of the erroneous instructions, the judgment of the trial court is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*