J. J. ARMENTROUT, ADMINISTRATOR OF SARA JANE YOW HUGHES, DECEASED v. W. R. HUGHES.

(Filed 31 January, 1958.)

**1. Death § 3—**

Right of action for wrongful death did not exist at common law, but is purely statutory, and our statute does not provide for the recovery of punitive damages or nominal damages, but limits recovery to the pecuniary loss resulting from the death.

**2. Death § 7—**

Where, in an action for wrongful death, defendant admits he wrongfully killed deceased, and the sole issue submitted is the issue of damages, plaintiff's contention that he is entitled to nominal damages at least which would entitle him to costs, G.S. 6-1, is untenable, and the court's charge limiting recovery to the pecuniary loss resulting from the death is without error.

**3. Same—**

In an action for wrongful death, the court properly excludes evidence which might excite the allowance of punitive damages, but which has no relevancy to the question of any pecuniary loss resulting from intestate's death.

**4. Same—**

The inventory of the estate of the decedent is not competent in an action for wrongful death when the inventory does not tend to establish any earning capacity of decedent at the time of his death.

PARKER, J., dissenting.

APPEAL by plaintiff from *Gwyn, J.,* February 1957 Civil Term of RANDOLPH.

Plaintiff seeks damages for the wrongful death of his intestate, defendant's wife, assaulted and killed by defendant. The complaint alleges deceased was 80 years of age, in good health, with a life expectancy in excess of five years.

Defendant admitted the killing, his conviction for murder, and prison sentence. He denied the deceased had any earning capacity. This issue was submitted to the jury: "What amount, if any, is plaintiff entitled to recover of the defendant?" The jury answered: "None." Judgment was signed adjudging that plaintiff recover nothing of defendant, and that costs be taxed to plaintiff. Plaintiff excepted and appealed.

*Miller & Beck for plaintiff appellant.*
*Moser & Moser for defendant appellee.*

RODMAN, J. The assignments of error raise questions as to the competency of evidence, the accuracy and propriety of the

charge, and the adjudication that plaintiff take nothing when, as a matter of law, he was, on the admissions made in the pleadings, entitled to at least nominal damages which would entitle him to costs. G.S. 6-1.

Basic to a decision of each assignment of error is the correct interpretation of our statute permitting recovery of damages for the wrongful death of another.

English common law, adopted as the law of our State, gave no right of action for damages for tortious killing of a human being. *Hinnant v. Power Co.,* 189 N.C. 120, 126 S.E. 307. England, in 1846, authorized recoveries in such cases by the statute known as "Lord Campbell's Act."

Our Legislature, eight years later, enacted a statute modeled on the English statute, c. 39, Laws 1854, R.C. c. 1, s. 9 and 10. The statute then enacted is now, without material change, incorporated in our laws as G.S. 28-173, 174. The statute by express language limits recovery to "such damages as are a fair and just compensation for the pecuniary injury resulting from such death." It does not provide for the assessment of punitive damages, nor the allowance of nominal damages in the absence of pecuniary loss.

The English statute was interpreted by the Courts of *Exchequer in Duckworth v. Johnson,* decided 4 June 1859, 4 H & N 653, 157 Eng. Rep. 997. The case turned on the provision of the statute dealing with the amount of damages which could be recovered. *Pollock, C.B.,* said: "My opinion is that, looking at the act of parliament, if there was no damage the action is not maintainable. It appears to me that it was intended by the Act to give compensation for damage sustained, and not to enable persons to sue in respect of some imaginary damage, and so punish those who are guilty of negligence by making them pay costs." *Watson, B.,* said: "I am also of opinion that the rule ought to be discharged. On one part of the case I have no doubt, namely, that no action can be maintained under the 9 & 10 Vict. c. 93, unless the plaintiff proves actual damage. I am clearly of opinion that negligence alone, without damage, does not create a cause of action."

This interpretation has been adhered to by the English courts. *Du Parcq, L.J.,* in 1941, said: "If they bring an action and prove no loss, actual or prospective, the defendant is entitled to the verdict: see *Duckworth v. Johnson." Yelland v. Powell Duffryn Associated Collieries,* Ld., 1 K.B. 519.

Our statute has from its passage been interpreted to accord with the interpretation given by the English courts to Lord Campbell's Act.

In 1867, *Reade, J.,* said in *Collier v. Arrington,* 61 N.C. 356: "The reason why, at common law, an action against a trespasser died with the person was, that it was not so much an action for pecuniary loss, as it was for a *solatium* for the wounded feelings of the plaintiff, and for the punishment of the defendant. But the plaintiff could not be solaced, nor the defendant punished after death. But our statute, which gives an action to the representative of a deceased party, who was injured or slain by a trespasser, confines the recovery to the amount of *pecuniary injury.* It does not contemplate *solatium* for the plaintiff, nor punishment for the defendant. It is therefore in the nature of pecuniary demand, the only question being; how much has the plaintiff lost by the death of the person injured?"

Speaking in 1872, *Justice Reade* said, in *Kesler v. Smith,* 66 N.C. 154: "The English statute (9-10 Vict. ch. 93) is substantially the same as ours. It is not precisely as definite as ours as to the rule of damages, inasmuch as our statute specifies "pecuniary injury," whereas the English statute also makes it the duty of the jury to apportion the damages among the beneficiaries, which ours does not.

"Although the English statute omits *pecuniary,* yet the rule of damages which the courts have laid down is 'the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased.' We have carefully examined the English cases, and although the rule is not laid down in all of them in precisely these words, yet in substance it is; and the *rule* may now be said to be *settled* as above."

*Devin, C. J.,* speaking in *Lamm v. Lorbacher,* 235 N.C. 728, 71 S.E. 2d 49, said: "So that the action for wrongful death exists only by virtue of this statute and the statutory provision must govern not only the right of action but also the rule for determining the basis and extent of recovery of damages therefor." See also *Russell v. Steamboat Co.,* 126 N.C. 961; *Gray v. Little,* 127 N.C. 304; *Carter v. R.R.,* 139 N.C. 499; *Poe v. R.R.,* 141 N.C. 525; *Speight v. R.R.,* 161 N.C. 80, 76 S.E. 684; *Journigan v. Ice Co.,* 233 N.C. 180, 63 S.E. 2d 183; *Caudle v. R.R.,* 242 N.C. 466, 88 S.E. 2d 138; Tiffany's Death by Wrongful Act (2nd ed.) s. 180.

We are aware of the divergent views held by courts of other states: some accord with our view and permit recovery only for pecuniary loss; others treat the act as vindicating a right and, by way of punishment, require the assessment of nominal damages. We adhere to the interpretation consistently accorded our statute.

Since plaintiff is not, as a matter of law, entitled to nominal damages, it follows that his exception and assignment of error to the judgment itself is without merit.

The court charged the jury: "If the plaintiff is entitled to recover at all, this is the formula and this is the standard by which you would measure any damages which the plaintiff is entitled to recover, and it would be your duty to award the plaintiff such amount and only such amount as the plaintiff has satisfied you from the evidence and by the greater weight thereof that he is entitled to recover according to this measurement . . ."

The court follows the quoted portion of his charge by a statement of the rule to which no exception is taken.

Plaintiff excepted the portion of the charge as quoted. The exception is without merit. The accuracy of the rule by which to measure is not challenged. The portion of the charge quoted is not an expression of opinion prohibited by statute. It is a correct statement of the law imposing on the jury the duty of determining from the evidence the pecuniary loss, if any, sustained.

The exceptions to the exclusion of evidence are likewise without merit. A description and interpretation of pictures of plaintiff's intestate, taken at a funeral home after she had been murdered, could not possibly have helped the jury in finding an answer to the question submitted to them but could have easily persuaded the jury to award punitive damages. Nor does an inventory of the estate, which merely shows that deceased owned a farm, had household effects, and money deposited with a building and loan association, without explanation of when or how she acquired these assets, assist the jury in answering the question propounded. *Cooper v. R.R.*, 140 N.C. 209. The inventory was admitted in *Hanks v. R.R.*, 230 N.C. 179, 52 S.E. 2d 717, because it showed a claim for salary owing, thus tending to establish an existing earning capacity. The inventory here offered gave no indication whatsoever of any earning capacity.

No Error.

PARKER, J., dissenting. This is an action to recover damages for death by wrongful act. The defendant in his answer admitted that he unlawfully killed plaintiff's intestate, that he pleaded guilty to second degree murder in the killing of plaintiff's intestate, and is now serving a sentence in the State Prison for such murder.

The judgment of the Court recites that "the parties, by their counsel of record, stipulated and agreed that the following issue only be submitted to the jury: What amount, if any, is the plain-

tiff entitled to recover of the defendant?" The jury answered the issue None.

Plaintiff assigns as error a part of the charge which in effect instructed the jury that plaintiff under the admitted facts here could not recover at least nominal damages.

The right of action to recover damages for death caused by wrongful act was first given in England in 1846 by the statute known as Lord Campbell's Act. Thereafter, statutes providing a remedy for such wrongful act causing death in one form or another were enacted in all, or practically all, of the states of this nation, as well as by the U. S. Congress, and the remedy has also been made available in the Philippine Islands and in Hawaii. 25 C.J.S., Death, Sec. 14.

This is written in 25 C.J.S., Death, Sec. 96: "According to the general current of American authority, where it appears in a statutory action for death that the death was caused by defendant's negligence, nominal damages may be recovered, although no actual pecuniary damage has been shown, but in some states the rule is otherwise."

These cases hold that nominal damages are recoverable in an action for wrongful death, even though no actual pecuniary damage be sustained, or none proved. *Battany v. Wall*, 232 Mass. 138, 122 N.E. 168; *Young v. Columbus & G. Ry. Co.*, 165 Miss. 287, 147 So. 342; *Rice v. Erie R. Co.*, 271 Pa. 180, 114 A. 640; *Yellow Cab Co. v. Maloaf*, 3 Tenn. App. 11; *Johnson v. McKnight*, 313 Ill. App. 260, 39 N.E. 2d 700; *Chapman v. Gulf M. & O. R. Co.*, 337 Ill. App. 611, 86 N.E. 2d 552; *Stroud v. Masek*, (Supreme Court of Missouri, Division No. 2), 262 S.W. 2d 47, 51; *Turon v. J. & L. Const. Co.*, 8 N.J. 543, 86 A. 2d 192, 200; *Swift & Co. v. Johnson*, (C.C.A. 8th), 138 F. 867, 1 L.R.A. (N.S.) 1161; *Atchison, T. & S. F. R. Co. v. Weber*, 33 Kan. 543, 551, 6 P. 877, 52 Am. Rep. 543; *Coal Co. v. Limb*, 47 Kan. 469, 471, 28 P. 181; *Jacksonville Electric Co. v. Bowden*, 54 Fla. 461, 45 So. 755, 15 L.R.A. (N.S.) 451; *Johnston v. Cleveland & T. R. Co.*, 7 Ohio St. 336, 70 Am. Dec. 75; *Fordyce v. McCants*, 51 Ark. 509, 11 S.W. 694, 4 L.R.A. 296, 14 Am. St. Rep. 69; *American R. Co. of Puerto Rico v. Santiago*, C.C.A. Puerto Rico, 9 F. 2d 753; *In re California Nav. & Imp. Co.* 110 Fed. 670; *Central of Georgia R. Co. v. Alexander*, 144 Ala. 257, 40 So. 424; *Alabama Mineral R. Co. v. Jones*, 121 Ala. 113, 25 So. 814; *Burk v. Arcata & M. R.R. Co.*, 125 Cal. 364, 57 P. 1065, 73 Am. St. Rep. 52; *S.A.L.R. Co. v. Moseley*, 60 Fla. 186, 53 So. 718; *Rhoads v. Chicago & A. R. Co.*, 227 Ill. 328, 81 N.E. 371, 11 L.R.A. (N.S.) 623, 10 Ann. Cas. 111 (Rehearing Denied 6 June 1907); *Grace & Hyde Co. v. Strong*, 224 Ill. 630, 79 N.E. 967; *North Chicago St. R. Co. v. Brodie*, 156 Ill. 317, 40 N.E. 942; *Korrady*

*v. Lake Shore & M. S. Ry. Co.,* 131 Ind. 261, 29 N.E. 1069; *Mulchahey v. Washburn Car Wheel Co.,* 145 Mass. 281, 14 N.E. 106, 1 Am. St. Rep. 458; *Carter v. Wabash R. Co.,* 193 Mo. App. 223, 182 S.W. 1061; *Morgan v. Oronogo Circle Mining Co.,* 160 Mo. App. 99, 141 S.W. 735; *Birkett v. Knickerbocker Ice Co.,* 110 N.Y. 504, 18 N.E. 108; *Ihl v. Forty-Second St., Etc., Ferry R.R. Co.,* 47 N.Y. 317, 7 Am. Rep. 450; *In re Ray's Will,* 208 Misc. 617, 143 N.Y.S. 2d 447. See also 25 C.J.S., Damages, Sec. 10, p. 468; 15 Am. Jur., Damages, Secs. 6 and 8.

There is contrary authority in England, *Duckworth v. Johnson,* 4 H. & N. 653, 157 English Reports, Full Reprint, 997; *Franklin v. South Eastern R. Co.,* 3 H. & N. 211, 157 English Reports, Full Reprint, 448, 8 E.R.C. 419; *Boulter v. Webster,* 11 L. T. Rep. N.S. 598; and apparently in Canada, 17 C.J., Death, p. 1322, Note 57; and in the following States of the United States: *Hurst v. Detroit City R. Co.,* 84 Mich. 539, 48 N.W. 44; *Van Brunt v. Cincinnati R. Co.,* 78 Mich. 530, 44 N.W. 321; *Cooper v. Lake Shore, Etc., R. Co.,* 66 Mich. 261, 33 N.W. 306, 11 Am. St. Rep. 482; *McGown v. International, Etc., R. Co.,* 85 Tex. 289, 20 S.W. 80; *Lazelle v. Newfane,* 70 Vt. 440, 41 A. 511; *Woodcock's Adm'r. v. Hallock,* 98 Vt. 284, 127 A. 380; *Regan v. Chicago, Etc., R. Co.,* 51 Wis. 599, 8 N.W. 292.

This Court said in *Hicks v. Love* and *Bruton v. Love,* 201 N.C. 773, 161 S.E. 394: "It is finally insisted that there is no evidence that justified the recovery of damages, and that the judge should have told the jury that the plaintiff could recover only a nominal amount. This position seems to be based on the theory that there is no direct evidence of the earning capacity of the deceased or of his net income. Direct evidence is not essential. More than nominal damages are recoverable for the negligent killing of an infant without direct evidence of the pecuniary damage other than sex, age, and health. *Russell v. Steamboat Co.,* 126 N.C. 961; *Davis v. R.R.* 136 N.C. 115. In the present case the recovery cannot be restricted to nominal damages."

In my opinion, this Court in the above case, and in *Russell v. Steamboat Co.,* 126 N.C. 961, 36 S.E. 191, has set itself on record that nominal damages at least can be recovered in an action for wrongful death in North Carolina, which is in line with the general current of American authority. The majority opinion quotes from *Collier v. Arrington,* 61 N.C. 356; *Kesler v. Smith,* 66 N.C. 154; and *Lamm v. Lorbacher,* 235 N.C. 728, 71 S.E. 2d 49. Those cases discuss the rule as to the recovery of actual damages in such cases. They, and neither of them, consider or mention the recovery of nominal damages in such cases. Nothing said in any of them militates, in my opinion,

against what this Court said in *Hicks v. Love* and *Bruton v. Love* as to the recovery of nominal damages in cases of wrongful death.

This Court said in *Hairston v. Greyhound Corp.*, 220 N.C. 642, 644, 18 S.E. 2d 166: "Nominal damages, consisting of some trifling amount, are those recoverable where some legal right has been invaded but no actual loss or substantial injury has been sustained. Nominal damages are awarded in recognition of the right and of the technical injury resulting from its violation."

In *Bond v. Hilton*, 47 N.C. 149, *Nash, C.J.*, in a full discussion of nominal damages, wrote a scholarly and illuminating opinion for the Court, which I quote *in extenso:*

"Wherever there is a breach of an agreement, or the invasion of a right, the law infers some damage, and if no evidence is given of any particular amount of loss it gives nominal damages by way of declaring the right, upon the maxim, *ubi jus ibi remedium.* In *Ashby v. White*, 1 Salk., 19, Lord Holt declared that 'every injury imports a damage, though it does not cost the party a farthing.' This principle has been applied to a variety of cases where the plaintiff's recovery is in damages; thus, in an action for words spoken, where no actual damage has been sustained; so, a trespass to the person or to realty. A remarkable case as exemplifying this doctrine is that of *Taylor v. Henniker*, 12 A. & E., 488. There the action is in 'case,' brought by a tenant against his landlord for illegally distraining for more rent than was due; it appearing that the proceeds of the sale were insufficient to satisfy the rent actually in arrear, the jury found a verdict for one shilling; a motion was made on the part of the defendant for a nonsuit, which was denied. *Denman, Chief Justice,* said: 'There was a wrongful act of the defendant, and though by reason of the nature of the goods taken falling short of the actual rent due no real damage was sustained, yet there was a *legal damage* and cause of action, for which the plaintiff was entitled to a verdict.' In *Laflin v. Willard*, 16 Pick., 64, a sheriff had neglected to return an execution; the action was in 'case,' and the Court declared that though there was no actual damages proved, where there is a neglect of duty the law presumes damages, and the plaintiff was entitled to a verdict for nominal damages. In *Whittimore v. Cutter*, 1 Gal., 429, *Justice Story* says: 'We are of opinion that where the law gives an action for a particular act, the doing that act imports itself a damage to the party; every violation of a

right imports some damage, and if none other be proved, the law allows a nominal damage.' The rule that the invasion of a right gives, in all cases, a claim to nominal damages applies equally to matters of contract; thus, in an action brought against a banker for refusing payment of a check, although in funds, no actual damage being shown, the Court of King's Bench decided that the plaintiff was entitled to nominal damages; *Marzetti v. Williams,* 1 B. & A., 415. See Sedgwick Dam., 46. In every contract implying a duty to be performed, the neglect of that duty gives, in law, a cause of action to the opposite party, under the maxim *ubi jus ibi remedium;* and where the law gives an action it gives damages for the violated right, and if no actual damage be shown, then the plaintiff is entitled to nominal damages."

The recovery of nominal damages entitles the plaintiff to have the costs taxed against the defendant. Nominal damages have been described as "a peg on which to hang costs." *Hutton v. Cook,* 173 N.C. 496, 92 S.E. 355; 25 C.J.S., Damages, Sec. 5.

Upon the facts admitted in the defendant's answer, and upon the stipulation of the parties that only one issue, that of damages, should be submitted to the jury, the law infers some damage by the defendant to the plaintiff, and the judge, in my opinion, should have charged the jury that they should, at the least, award plaintiff nominal damages. In failing to do so, he deprived the plaintiff of a substantial right, because a recovery of nominal damages would have carried the costs against the defendant. The judgment taxes the plaintiff with the costs.

I am aware of *Wolfe v. Montgomery Ward & Co.,* 211 N.C. 295, 189 S.E. 772, the headnote of which in our Reports reads: "Where the jury finds that plaintiff was slandered but does not award damages, the failure of the court to instruct the jury that an affirmative answer to the issue entitles plaintiff to nominal damages at least does not entitle plaintiff to a new trial, but the judgment must be modified to adjudge nominal costs, C.S., 1241 (4), and affirmed, since the item of costs is too small to justify a new trial." The modification of the judgment in that case so as to tax nominal costs against the defendant was based upon C.S., 1241 (4), now G.S. 6-18 (4), which reads: "In an action for . . . slander . . . , if the plaintiff recovers less than fifty dollars damages, he shall recover no more costs than damages." In that case by virtue of the statute the recovery of costs would be trifling. In *Cohoon v. Cooper,* 186 N.C. 26, 118 S.E. 834, cited as an authority in the Wolfe case, the court reduced the verdict in the amount of 95 cents.

ARMENTROUT *v.* HUGHES.

I have known several cases where the costs taxed against the losing party amounted to as much as one thousand dollars. *Tichborne v. Lushington* was, perhaps, the greatest ejectment suit ever tried in an English-speaking Court, and came on to be heard on 10 May 1871 at Westminster before *Sir W. Bovill, Lord Chief Justice* of the Court of Common Pleas. A brilliant array of barristers were employed, and witnesses came from the four quarters of the earth. Sir John Coleridge, afterwards Lord Chief Justice of England, led for the defense. On a cold February day he closed his speech for the defendant—a speech that lasted for twenty-five sittings of the Court, and was the longest speech ever made in a British court of law—with one of the most impressive perorations ever delivered by an English barrister. It cost the Tichborne estate over 96,000 pounds to defend the case. MacGregor's "The Tichborne Imposter," p. 169. When the ejectment suit ended unfavorably to the plaintiff, who was known as the claimant, he was indicted for perjury, convicted and sentenced to imprisonment. *The Queen v. Thomas Castro, otherwise Arthur Orton, otherwise Sir Roger Charles Doughty Tichborne, Baronet,* (1874) L.R., 9 Q.B. 350; same case in the House of Lords, (1881) L.R., 6 App. Cas. 229. The criminal trial began on 23 April 1873, and ended on 28 February 1874. It was the longest criminal trial in the history of the English law courts. Again witnesses came from the ends of the earth. Dr. Edward Vaughan Kenealy, barrister for the defendant, spoke for 21 days. Sir Henry Hawkins, one of the ablest barristers in the long history of the English Bar and afterwards a famous judge, who led for the Crown, spoke for some 12 days. The eminent *Lord Chief Justice, Sir Alexander Cockburn,* presiding—formerly a top flight barrister—, occupied 20 days in summing up the case for the jury. *Mellor* and *Lush, J J.,* who sat with the Lord Chief Justice, had full right to dissent from anything the Lord Chief Justice said, but did not, both agreeing with his summing up in its entirety. The summing up of the Lord Chief Justice was widely acclaimed by Bench and Bar. The cost of the criminal trial to England was 55,315 pounds. MacGregor's "The Tichborne Imposter," p. 188. I have mentioned the Tichborne cases to show that court costs may at times be enormous, and that the taxing of costs is a substantial right. I know of one case to settle a boundary line dispute involving a few acres of swamp land, when on the fourth and final jury trial in the Superior Court the real contest was not to win the land, but who should be taxed with the costs.

The majority opinion has adopted a view that represents distinctly a very small minority view among the courts of this nation. Upon the defendant's admissions in his answer and his

stipulation as to the issues to be submitted to the jury, the law infers some damage to the plaintiff. *Bond v. Hilton, supra.* And yet, because plaintiff could show no basis for the recovery of actual damages, he is taxed with the costs, and a majority of my brethren approve the action of the lower court. To that I cannot agree.

I think that the assignment of error to the charge above set forth deprives plaintiff of a substantial right, and entitles him to a new trial.